DIANA RUTOWSKI (SBN 233878)
drutowski@orrick.com
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: +1 650-614-7685
Facsimile: +1 650-614-7401

DAVID P. FUAD (SBN 265193)
dfuad@orrick.com
Orrick, Herrington & Sutcliffe LLP
355 S. Grand Avenue, Suite 2700
Los Angeles, CA 90071
Telephone: +1 213-629-2369
Facsimile: +1 213-612-2499

***Additional Counsel on Signature Page

*Attorneys for Defendant*
Aghanim Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| XSOLLA (USA), INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>AGHANIM INC., a Delaware Corporation, et al.,<br><br>Defendants. | Case No. 2:24-cv-02116-ODW-AGR<br><br>**DEFENDANT AGHANIM INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   June 3, 2024<br>Time:   1:30pm<br>Place:  Courtroom 5D, 5th Floor, First Street Courthouse<br>Judge:  Hon. Otis D. Wright II |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 3, 2024, at 1:30 p.m., or as soon thereafter as this matter may be heard before the Honorable Otis D. Wright, II in Courtroom 5D, 5th Floor of the above-entitled court, located at First Street Courthouse, 350 W. 1st Street, Los Angeles, CA, Defendant Aghanim Inc. ("Aghanim")[1] will and hereby does move this Court to dismiss the First Amended Complaint ("FAC") filed by Plaintiff Xsolla (USA) Inc. ("Xsolla"). Aghanim seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing all of Xsolla's claims against Aghanim with prejudice on the following grounds:

Xsolla's First and Second Causes of Action for trade secret misappropriation under the Defend Trade Secrets Act ("DTSA") and the California Uniform Trade Secrets Act ("CUTSA") should be dismissed because Xsolla failed to sufficiently plead its alleged trade secrets or allege that they have independent economic value. Xsolla also failed to allege reasonable measures it takes to protect the secrecy of the alleged trade secrets. Additionally, Xsolla failed to sufficiently allege that trade secrets were actually misappropriated. Finally, Xsolla's damages allegations are conclusory and are void of factual support.

Xsolla's Third, Fourth, Fifth, and Sixth Causes of Action for Intentional and Negligent Interference with Prospective Economic Advantage, Intentional Interference with Contract, and Unfair Competition under Cal. Bus. & Prof. Code § 17200 should be dismissed because they are preempted by CUTSA. These counts also fail to state a cause of action upon which relief can be granted.

Xsolla's Seventh Cause of Action for Trademark Infringement should be dismissed because it fails to state a claim—the FAC alleges only nominative fair use of the term "Xsolla" to refer to the prior employer of Aghanim's founders.

---

[1] Aghanim understands that Defendant Albert Tagirovich Tugushev has not yet been served and thus does not have a response deadline

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

1         This Motion is made following the conference of counsel pursuant to Local

2   Rule 7-3, which took place on April 26, 2024, more than seven days prior to the

3   filing of this Motion. Earlier this month, on April 2, 2024, the parties met and

4   conferred about Aghanim's intended motion to dismiss Xsolla's original complaint,

5   in response to which Xsolla filed its First Amended Complaint as a matter of course

6   under Rule 15(a)(1). But the substantive deficiencies in all of its causes of action

7   remained, as detailed during the subsequent meet and confer and below.

8         This Motion is based on this Notice of Motion and Motion, the

9   accompanying Memorandum of Points and Authorities, the Request for Judicial

10  Notice ("RJN") filed herewith, the pleadings and papers filed in this action, and

11  such further argument as may be offered at the hearing of this Motion.

12

13  Dated:  May 3, 2024          Respectfully submitted,

14                             ORRICK, HERRINGTON & SUTCLIFFE

15

16

17                             By:  */s/ Diana Rutowksi*
                              DIANA RUTOWSKI

18                                drutowski@orrick.com
                              Orrick, Herrington & Sutcliffe LLP

19                                1000 Marsh Road
                              Menlo Park, CA  94025

20                                Telephone: +1 650-614-7685
                              Facsimile: +1 650-614-7401

21

22                                *Attorney for Defendant*
                              Aghanim, Inc.

23

24

25

26

27

28

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

# <u>TABLE OF CONTENTS</u>

**Pages(s)**

I.    INTRODUCTION ............................................................................................ 1

II.   STATEMENT OF RELEVANT ALLEGED FACTS ................................... 3

III.  LEGAL STANDARD ................................................................................... 5

IV.   ARGUMENT ................................................................................................ 5

    A.    Xsolla's Trade Secret Misappropriation Counts Fail to State a Claim. ................................................................................................... 6

        1.    Xsolla Fails to Plead Ownership of a Trade Secret. ................... 6

            a.    Xsolla does not identify any alleged trade secrets with sufficient particularity. ....................................................... 7

            b.    Xsolla fails to adequately plead independent economic value. .................................................................................. 9

            c.    Xsolla fails to plead reasonable measures to keep information secret. ............................................................. 10

        2.    Xsolla Fails to Plead Misappropriation. ................................... 13

        3.    Xsolla Fails to Plead Damages ................................................. 15

    B.    Xsolla's CUTSA Claim Preempts Its Common-Law Claims. ............. 16

    C.    Xsolla's State-Law Claims Fail to Plead a Claim. ............................. 18

        1.    Xsolla Failed to Adequately Plead Injury or Damages. ............ 18

        2.    Xsolla Fails to Plausibly Plead Its UCL Claim. ........................ 20

    D.    Xsolla Fails to State a Claim for Trademark Infringement. ............... 21

V.    CONCLUSION ........................................................................................... 22

CERTIFICATE OF COMPLIANCE ....................................................................... 24

# **TABLE OF AUTHORITIES**

**Cases**                                                                        **Page(s)**

*Acrisure of Cal. v. SoCal Com. Ins. Servs.*,
   2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) ...................................................... 7

*Agency Solutions.Com v. TriZetto Grp.*,
   819 F. Supp. 2d 1001 (E.D. Cal. 2011) ................................................................ 15

*Architectural Mailboxes v. Epoch Design, LLC*,
   2011 WL 1630809 (S.D. Cal. Apr. 28, 2011) ...................................................... 22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................... 5, 19

*Berryman v. Merit Prop. Mgmt.*,
   152 Cal. App. 4th 1544 (2007) ............................................................................ 20

*Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ........................................................................................ 20

*Cervantes v. Countrywide Home Loans, Inc.*,
   656 F.3d 1034 (9th Cir. 2011) .............................................................................. 6

*ChromaDex, Inc. v. Elysium Health*,
   2018 WL 4816131 (C.D. Cal. July 26, 2018) ...................................................... 15

*CleanFish v. Sims*,
   2020 WL 4732192 (N.D. Cal. Aug. 14, 2020) ...................................................... 7

*Delphix Corp. v. Actifo*,
   2014 WL 4628490 (N.D. Cal. Mar. 19, 2014) .................................................... 14

*Drum v. San Fernando Valley Bar Ass'n*,
   182 Cal. App. 4th 247 (2010) .............................................................................. 20

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   11 F.3d 1460 (9th Cir. 1993) .............................................................................. 21

*E. & J. Gallo Winery v. Instituut Voor Landbouw—En Visserijonderzoek*,
   2018 WL 2463869 (E.D. Cal. June 1, 2018) ...................................................... 14

*Fail-Safe v. A.O. Smith Corp.*,
   674 F.3d 889 (7th Cir. 2012) .............................................................................. 10

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

**Cases**                                                                                             **Page(s)**

*Farmers Edge v. Farmobile,*
   970 F.3d 1027 (8th Cir. 2020) ............................................................ 12

*Farmers Ins. Exch. v. Steele Ins. Agency,*
   2013 WL 3872950 (E.D. Cal. 2013 July 25, 2013) ............................ 12

*Flexpand v. Cream,*
   2020 WL 13504975 (N.D. Cal. Sept. 9, 2020)................................... 14

*Gabriel Techs. Corp. v. Qualcomm,*
   2009 WL 3326631 (S.D. Cal. Sept. 3, 2009) .................................... 16

*Genasys v. Vector Acoustics,*
   638 F. Supp. 3d 1135 (S.D. Cal. 2022) ............................................. 8

*Genentech v. JHL Biotech,*
   2019 WL 1045911 (N.D. Cal. Mar. 5, 2019) .................................... 6

*Gibson Brands v. John Hornby Skewes & Co.,*
   2015 WL 4651250 (C.D. Cal. Aug. 4, 2015) .................................... 22

*GlobeSpan v. O'Neill,*
   151 F. Supp. 2d 1229 (C.D. Cal. 2001)......................................... 6, 15

*Harris-Scott v. Immelt,*
   2013 WL 369013 (N.D. Cal. Jan. 29, 2013) .................................... 20

*Heieck v. Fed. Signal Corp.,*
   2019 WL 6873869 (C.D. Cal. Nov. 4, 2019)................................... 16

*Hensley Mfg. v. ProPride,*
   579 F.3d 603 (6th Cir. 2009) ............................................................ 22

*Hoffman v. Goli Nutrition,*
   2024 WL 230873 (C.D. Cal. Jan. 17, 2024)..................................... 13

*In re Ingle Co.,*
   116 F.3d 1485 (9th Cir. 1997) ......................................................... 12

*InteliClear v. ETC Glob. Holdings,*
   978 F.3d 653 (9th Cir. 2020) ........................................................... 12

# <u>TABLE OF AUTHORITIES (CONTINUED)</u>

**Cases**                                                                                          **Page(s)**

*KEMA v. Koperwhats*,
    2010 WL 3464708 (N.D. Cal. Sept. 1, 2010)......................................................12

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal.4th 1134 (2003)........................................................................................18

*Lam Res. Corp. v. Deshmukh*,
    157 F. App'x 26 (9th Cir. 2005)..........................................................................15

*Mason v. Amtrust Fin. Servs.*,
    848 F. App'x 447 (2d Cir. 2021).........................................................................12

*MD Helicopters v. Aerometals*,
    2021 WL 978953 (E.D. Cal. Mar. 16, 2021) ......................................................12

*MedImpact Healthcare Sys. v. IQVIA*,
    2020 WL 5064253 (S.D. Cal. 2020 Aug. 27, 2020) ....................................16, 17

*MGIC Indem. Corp. v. Weisman*,
    803 F.2d 500 (9th Cir. 1986)..................................................................................3

*Miranda v. Thiry*,
    2021 WL 5760299 (C.D. Cal. Dec. 2, 2021) ........................................................9

*Moore v. Doe*,
    2020 WL 6804508 (C.D. Cal. Oct. 13, 2020) ....................................................22

*Moreland Apts. Assocs. v. LP Equity*,
    2019 WL 6771792 (N.D. Cal. Dec. 12, 2019) ...................................................8, 9

*Murray v. Cable Nat'l Broad.*,
    86 F.3d 858 (9th Cir. 1996), *as amended* (Aug. 6, 1996) .................................21

*Nelson Bros. Pro. Real Estate v. Jaussi*,
    2017 WL 8220703 (C.D. Cal. Mar. 23, 2017) ...................................................12

*Pirozzi v. Apple, Inc.*,
    966 F.Supp.2d 909 (N.D. Cal. 2013)...................................................................19

*Power Integrations v. De Lara*,
    2020 WL 1467406 (S.D. Cal. Mar. 26, 2020)........................................................5

iv

## TABLE OF AUTHORITIES (CONTINUED)

**Cases**                                                                                                    **Page(s)**

*In re Providian Credit Card Cases,*
  96 Cal. App. 4th 292 (2002) ....................................................................... 12

*Rearden LLC v. Rearden Commerce,*
  Inc., 683 F.3d 1190 (9th Cir. 2012) ........................................................... 21

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs.,*
  923 F. Supp. 1231 (N.D. Cal. 1995) ........................................................... 12

*Rescue 1 Fin. v. Complete Debt Relief,*
  2023 WL 6373884 (C.D. Cal. Aug. 24, 2023) ......................................... 9, 14

*Silicon Knights v. Crystal Dynamics,*
  983 F. Supp. 1303 (N.D. Cal. 1997) ...................................................... 18, 19

*Space Data Corp. v. X,*
  2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) ..................................... 5, 6, 14

*Spice Jazz v. Youngevity Int'l,*
  2020 WL 6484640 (S.D. Cal. Nov. 4, 2020) ............................................... 14

*Stevo Design v. SBR Mktg.,*
  919 F. Supp. 2d 1112 (D. Nev. 2013) ......................................................... 21

*Sylabs v. Rose,*
  2023 WL 8813517 (N.D. Cal. Dec. 19, 2023) ............................................ 16

*Synopsys v. ATopTech,*
  2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ............................................... 9

*TRC & Assocs. v. Nuscience,*
  2013 WL 6044315 (C.D. Cal. Nov. 14, 2013) .............................................. 7

*Unified Grocers v. VM Int'l,*
  2020 WL 5370621 (C.D. Cal. Apr. 8, 2020) ................................................ 9

*VBS Distrib. v. Nutrivita Laboratories,*
  811 F. App'x 1005 (9th Cir. 2020), *cert. denied,* 141 S. Ct. 454 (2020) .......... 12

*Veronica Foods v. Ecklin,*
  2017 WL 2806706 (N.D. Cal. June 29, 2017) .............................................. 8

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

**Cases**                                                                                      **Page(s)**

*Wagner Aeronautical v. Dotzenroth,*
    2022 WL 6837701 (S.D. Cal. Oct. 7, 2022)................................................ 10, 11

*WalkMe v. Whatfix,*
    2024 WL 1221960 (N.D. Cal. Mar. 21, 2024) ....................................... 9

*Waymo LLC v. Uber Tech.,*
    256 F. Supp. 3d 1059 (N.D. Cal 2017)................................................. 18

*Western Air Charter v. Schembari,*
    2017 WL 10638759 (C.D. Cal. Oct. 6, 2017) ............................................. 17, 19

*Woodall v. Walt Disney Co.,*
    2021 WL 2982305 (C.D. Cal. Apr. 14, 2021).................................. 7, 12, 13

*Workplace Techs. Rsch. v. Project Mgmt. Inst.,*
    664 F. Supp. 3d 1142 (S.D. Cal. 2023) ................................................ 7

*Zoom Imaging Sols. v. Roe,*
    2019 WL 5862594 (E.D. Cal. Nov. 8, 2019) ..................................... 8, 9

*Zoom Imaging Sols. v. Roe,*
    2020 WL 489238 (E.D. Cal. Jan. 30, 2020)....................................... 19

*Zoom Imaging Sols. v. Roe,*
    2022 WL 4025293 (E.D. Cal. Sept. 2, 2022) ..................................... 11

**Statutes**

15 U.S.C.
    § 1114 .............................................................................................. 20, 21

18 U.S.C
    § 1332 .............................................................................................. 6
    § 1367 .............................................................................................. 6
    § 1836 ....................................................................................... 2, 7, 16, 20
    § 1839(3) .......................................................................................... 6
    § 1839(5) .......................................................................................... 6, 13

# TABLE OF AUTHORITIES (CONTINUED)

**Rules**                                                                                          **Page(s)**

Fed. R. Civ. P.
   Rule 8 ............................................................................................................... 5, 19
   Rule 9(b) .......................................................................................................... 20, 21
   Rule 12(b)(6) ...................................................................................................... 2, 5

Fed. R. Evid.
   Rule 201(b) ............................................................................................................. 3

Cal. Civ. Code
   § 3426.1 ................................................................................................ 2, 6, 16, 20
   § 3426.1(b) ...................................................................................................... 9, 13
   § 3426.1(d) ....................................................................................................... 6, 8
   § 3426.7 ............................................................................................................... 16

Cal. Bus. & Prof. Code
   § 17204 ................................................................................................................ 19
   § 17200 ............................................................................................. 17, 18, 19, 20

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3         Xsolla's First Amended Complaint ("FAC") is a mash-up of baseless

4    allegations rooted in the retaliatory and anti-competitive motives of its billionaire

5    founder and sole shareholder Aleksandr Agapitov, and his desire to keep two

6    former executives from being able to work in the only industry they have known for

7    the past decade. Konstantin Golubitsky and Constantin Andry—prominently

8    featured in the FAC but not named as defendants—are former Xsolla executives

9    who departed Xsolla in spring 2023 and soft-launched Aghanim's initial

10   commercial offerings around February 2024.

11        Xsolla first became aware of Aghanim's formation in summer 2023, at which

12   time Xsolla founder Agapitov sent Golubitsky and Andry clown and poop emojis to

13   reflect his feelings about their newly-formed venture. However, it was not until

14   November 2023, when Agapitov learned that Aghanim was hiring, planning to

15   attend one of the biggest video game industry events, and about to close a funding

16   round, that he militarized Xsolla's lawyers to make Xsolla's first anti-competitive

17   move. In an attempt to interfere with Aghanim's efforts, Xsolla wrote to Golubitsky

18   and Andry, claiming they used Xsolla's unidentified "Confidential/Trade Secret

19   Information" in unspecified ways.

20        Despite Golubitsky and Andry's repeated written requests for specifics,

21   Xsolla lay in wait for months. Then, on March 14, 2024, just *one* business day

22   before Andry was publicly scheduled to pitch Aghanim to hundreds of investors at

23   the largest video game developers' conference of the year, Xsolla filed this lawsuit

24   against Aghanim. And not against Golubitsky or Andry—but 50 "unknown" Does.

25   A month later, in an apparent effort to cure pleading deficiencies identified by

26   Aghanim during meet and confer, Xsolla named in its FAC Albert Tagirovich

27

28

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

Tugushev,[2] a short-term former Xsolla contractor who is now an Aghanim executive.

This history, combined with the glaring deficiencies in Xsolla's pleading, demonstrates the FAC is designed to tarnish Aghanim's name. Each of Xsolla's claims against Aghanim—(1) Violation of the Defend Trade Secrets Act ("DTSA"), (2) Violation of California Uniform Trade Secrets Act ("CUTSA"), (3) Intentional Interference with Prospective Economic Advantage, (4) Negligent Interference with Prospective Economic Advantage, (5) Intentional Interference with Contract, (6) Unfair Competition, and (7) Federal Trademark Infringement—is based on threadbare and conclusory pleadings and must be dismissed under Rule 12(b)(6).

With respect to Xsolla's DTSA and CUTSA claims, first, Xsolla fails to plead its alleged trade secrets with particularity, citing product names and publicly available features on its platform without differentiating what information constitutes its alleged trade secrets. As Xsolla said in promoting its publicly-available product guide: "Alright, you caught us! It's not our best kept secret."[3] Second, Xsolla fails to allege economic value. Third, the FAC fails to allege reasonable measures protecting Xsolla's purported trade secrets, pleading inconsistent and insufficient efforts. Fourth, Xsolla's allegations of trade secret misappropriation are speculative at best. Fifth, Xsolla's damages allegations are conclusory.

Xsolla's four state-law claims rely on the same allegations of trade secret misappropriation and are preempted by CUTSA. They also fail to state a claim upon which relief can be granted.

---

[2] Tugushev, not Tagirovich, is Albert Tugushev's last name.

[3] *See* "Xsolla Book," *available at*
http://xsolla.maiik.ru/xsolla_com_book/xsollabook(10-03-17).webflow/,
https://twitter.com/xsolla/status/844636536234659840 (last accessed May 3, 2024).

DEFENDANT AGHANIM'S
                                                                      MOTION TO DISMISS
                                                                      2:24-cv-02116-ODW-AGR

Finally, Xsolla's trademark infringement claim fails to plausibly plead infringing use of the Xsolla mark, alleging only nominative fair use of "Xsolla" in reference to the previous work experience of Aghanim's executives—not trademark infringement.

Xsolla's scattershot complaint against Aghanim should be dismissed with prejudice in its entirety.

## II.    STATEMENT OF RELEVANT ALLEGED FACTS

Several themes running through Xsolla's alleged facts reveal the pleading deficiencies and highlight its objective to harass. First, Xsolla parrots its public product marketing materials to allege its so-called "trade secrets." *See, e.g.*, FAC ¶ 22. Xsolla is a payment processing platform, FAC ¶¶ 1, 19, making its money by taking a cut of each transaction, RJN, Ex. O, from customers and developers who use its publicly available and publicly marketed offerings. The "unique technologies" Xsolla lists in the FAC, ¶ 22, are available on Xsolla's website, with "demos" and in-depth "how-to" guides. *See* RJN, Exs. A-K.[4] Xsolla's "customized solutions for individual customer problems," FAC ¶ 25, fare no better: dozens of customer "success stories" are featured on Xsolla's website, highlighting the products they used to address a particular issue they faced. *See* RJN, Exs. M-N.

Second, while Xsolla claims "companies in this industry fiercely protect their intellectual property and customer information," FAC ¶ 20, Xsolla falls short. By its own admission, not all employees sign agreements with confidentiality provisions. *Id.* ¶ 27. The three documents with confidentiality provisions Xsolla cites in relation to the individuals at the heart of its claims are in complete disarray: (1) Golubitsky allegedly executed an employment agreement, but did so *nine years*

---

[4] In deciding a motion to dismiss, a court may take judicial notice of facts and "matters of public record." *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). Concurrently with this motion, Aghanim requests that the Court take judicial notice that materials on Xsolla's website are publicly available under Fed. R. Evid. 201(b).

*after* joining Xsolla, *id.* ¶¶ 29-30; (2) Andry was never required to execute a confidentiality agreement and only allegedly signed an employee handbook *six years after* joining Xsolla, *id.* ¶¶ 34-35; and (3) Tugushev allegedly signed an Independent Contractor Agreement ("ICA") in 2023 (with no allegation regarding the "Mutual Confidentiality Agreement" cited therein), *id.* ¶ 38, when he allegedly started gathering trade secret information in "late-2022," *id*. ¶¶ 41,71. Xsolla—a company with "nearly 1,000 employees worldwide," *id.* ¶ 26—is unable to demonstrate robust reasonable measures vis-à-vis these three individuals, who allegedly had "full" "access to the most sensitive and mission-critical Xsolla information," *id.* ¶¶ 40, 74.

Third, allegations most critical to Xsolla's claims are "on information and belief"—over two dozen[5] of them. For example, it is "on information and belief" that Aghanim used Xsolla's alleged trade secrets to attract business. *Id.* ¶¶ 49, 50, 53. It is "on information and belief, Aghanim could not have developed its platform . . . without the improper use of Xsolla technology . . . ." *Id.* ¶ 58. It is "on information and belief" that Tugushev—starting in "late-2022"—"spent months . . . gathering [Xsolla's] trade secret and confidential information." *Id.* ¶¶ 42, 46, 71. Another problem with this allegation is that Tugushev did not join Xsolla until March 1, 2023. *Id.* ¶ 38. The only allegations Xsolla is certain of pertain to Aghanim founders' departures from Xsolla and the soft launch of Aghanim. *Id.* ¶¶ 44, 46, 55. Everything else is pure speculation.

Fourth, despite its grievances, Xsolla's damages allegations remain vague and conclusory. *See, e.g.*, *id.* ¶ 9 ("lost valuable business opportunities"). Despite Xsolla's repeated allegations that Aghanim attempted to "improperly solicit Xsolla customers," *id.* ¶¶ 8, 50, 53, 54, 57, 61, 62, Xsolla does not allege it lost a single

---

[5] In some instances, Xsolla drops the "on information and belief" qualifiers, but doing so does not turn allegations based on assumptions and speculation into ones based on facts. *Compare id.* ¶ 56, *with id.* ¶ 58.

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

customer to Aghanim. And it attempts to transform prudent business practices like "reconsider[ing] its long-term strategy" to keep up with an evolving market into damages allegations. *Id.* ¶ 9. Further, despite knowing about Aghanim's activities for many months and allegedly "continu[ing] to suffer" "harm," *id.* ¶¶ 100-01, Xsolla has not sought preliminary injunctive relief.

<u>Finally</u>, in connection with Xsolla's trademark claim, the FAC alleges only references to "Xsolla" as the former employer of Aghanim's founders. *See, e.g.*, FAC ¶¶ 1-2, 52, *id.* at Ex. A ("Golubitsky, Co-Founder, Co-CEO, 1,7 Years CEO @ Xsolla, 9,1 Years CTO @ Xsolla."); *id.* at Ex. B ("Aghanim . . . founded by former CEO and CTO of Xsolla, launches to transform how mobile games are monetized and distributed.").

## III.  **LEGAL STANDARD**

The determination of whether a complaint satisfies the Rule 8 plausibility standard on a Rule 12(b)(6) motion is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In this analysis, a court "does not take legal conclusions as true merely because they are cast in the form of factual allegations." *Power Integrations v. De Lara*, 2020 WL 1467406, at *18 (S.D. Cal. Mar. 26, 2020). A trade secret complaint must do more than provide "a conclusory list of the 'forms and types' of trade secrets actionable." *Id.* Also, "facts providing a reasonable basis" to infer misappropriation are necessary. *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017). When such factual content is missing, "allegations fail to provide adequate notice of the trade secret(s) . . . and, thus, do not satisfy Rule 8 pleadings standards." *De Lara*, 2020 WL 1467406, at *18.

## IV.  **ARGUMENT**

Xsolla's FAC should be dismissed in its entirety as to Aghanim. It fails to state a claim for which relief can be granted under DTSA, CUTSA, or the Lanham

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

1   Act. Further, CUTSA preempts Xsolla's four state-law claims, which also fail to

2   state a claim upon which relief can be granted.[6] Having already attempted to amend

3   once, Xsolla's FAC should be dismissed with prejudice because any further

4   "amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656

5   F.3d 1034, 1041 (9th Cir. 2011) (leave to amend may be denied where "amendment

6   would be futile").

### A.    Xsolla's Trade Secret Misappropriation Counts Fail to State a Claim.

9   For purposes of a motion to dismiss, "the elements of CUTSA and DTSA

10  claims are substantially the same." *Genentech v. JHL Biotech*, 2019 WL 1045911,

11  at *10 (N.D. Cal. Mar. 5, 2019). A claim must allege: (1) the plaintiff owned a trade

12  secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's

13  actions damaged the plaintiff. *GlobeSpan v. O'Neill*, 151 F. Supp. 2d 1229, 1235

14  (C.D. Cal. 2001); *see also* 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b).

15  Xsolla's trade secret misappropriation counts fail on each element.

### 1.    Xsolla Fails to Plead Ownership of a Trade Secret.

17  Xsolla fails to allege a trade secret for three independently fatal reasons: (a)

18  Xsolla lists broad categories of information without distinguishing what is

19  purportedly "secret" from what is public*, see Space*, 2017 WL 5013363, at *2

20  (dismissing claims where plaintiff failed to specify "which aspects of its technology

21  . . . are secret") (internal citation omitted); (b) Xsolla does not (and cannot) allege

22  the information at issue provides independent economic value because of its

23  purported secrecy*, see* 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d); and (c)

24  Xsolla's alleged measures to protect the information's secrecy are facially

---

26  [6] With no diversity of citizenship under 18 U.S.C § 1332, this Court can only
27  exercise 18 U.S.C. § 1367 supplemental jurisdiction over state-law claims. Without
    federal claims, the Court will lack subject matter jurisdiction over the state-law
28  claims.

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

inconsistent and unreasonable.

### a. **Xsolla does not identify any alleged trade secrets with sufficient particularity.**

A plaintiff must identify "the trade secret with sufficient particularity . . . to permit the defendant to ascertain . . . the boundaries within which the secret lies." *Acrisure of Cal. v. SoCal Com. Ins. Servs.*, 2019 WL 4137618, at *3 (C.D. Cal. Mar. 27, 2019) (internal citation omitted). There are no boundaries or particularity in Xsolla's allegations: it "has essentially pled that all information related to its customers and business is a trade secret." *CleanFish v. Sims*, 2020 WL 4732192, at *4 (N.D. Cal. Aug. 14, 2020). Its allegations are either too broad and vague or include non-secret and publicly available information, making it impossible "to convey an understanding of its parameters or to separate it from matters of general knowledge." *Workplace Techs. Rsch. v. Project Mgmt. Inst.*, 664 F. Supp. 3d 1142, 1159 (S.D. Cal. 2023).

Xsolla groups its alleged trade secrets into two categories: technical information, and customer information and pricing. With respect to the former, Xsolla's purported "unique technologies" are disclosed at length in its publicly available information: Pay Station, Site Builder, Web Shop, In-Game Store, Personalization, Marketing Solutions, Game Launcher App, Xsolla Mall, and Fraud Protection Solution. *Compare* FAC ¶¶ 22, 41, 67, 77; *with* RJN, Exs. A-K. Xsolla's "worldwide tax compliance algorithms" allegation, *id.* ¶ 67, suffers from the same defect also because tax rules are public and compliance requires transparency. *See* RJN, Ex. L.

It is axiomatic that materials that are "publicly available on Plaintiff's website are not trade secrets," compelling dismissal. *Woodall v. Walt Disney Co.*, 2021 WL 2982305, at *11 (C.D. Cal. Apr. 14, 2021); *see also TRC & Assocs. v. Nuscience*, 2013 WL 6044315, at *3 (C.D. Cal. Nov. 14, 2013) ("If the ingredients named in the Complaint are in the public domain, then they cannot be trade

7

secrets.") (citing 18 U.S.C. § 1839); *Genasys v. Vector Acoustics*, 638 F. Supp. 3d 1135, 1152 (S.D. Cal. 2022) (granting motion to dismiss where some of the information is publicly available); *Moreland Apts. Assocs. v. LP Equity*, 2019 WL 6771792, at *4 (N.D. Cal. Dec. 12, 2019) (no trade secret protection for "publicly available information"); Cal. Civ. Code § 3426.1(d) (defining trade secret as information "not being generally known to the public"). Without identifying what is trade secret, the FAC "gives defendants no clue whatsoever about what information forms the basis of plaintiff's misappropriation claim." *Zoom Imaging Sols. v. Roe*, 2019 WL 5862594, at *5 (E.D. Cal. Nov. 8, 2019).

The same is true for Xsolla's second category of alleged trade secrets—allegations of "customer information and pricing." Xsolla asserts that its "customer lists and related customer information . . . are proprietary, kept in confidence, and represent trade secret information." FAC ¶ 25. But this allegation "carries little weight where material subject to judicial notice shows" Xsolla "itself has publicized its relationship with many of its customers." *Veronica Foods v. Ecklin*, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017). Xsolla drops the names of at least a hundred customers on its own website, including highlighting them in so-called "success stories" and "Winner's Circle." *See* RJN, Exs. M-N. Moreover, a Google search of the phrase "Xsolla is an authorized global distributor of" produces hundreds of Xsolla customers and their related customer information.[7] As for the alleged "customized solutions for individual customer problems," FAC ¶ 25, and "details about the customer's products and how they use Xsolla's offerings," *id.* ¶ 69, these are not secret either. Xsolla proudly displays dozens of customer "success stories" on its website, highlighting the products they used to address a particular business issue. *See* RJN, Ex. N. Same with pricing: Xsolla purports to be transparent about its pricing all over its website, RJN, Ex. O, undermining secrecy.

---

[7] *See* RJN, Ex. P.

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

Thus, Xsolla's vague allegations that "customer list and preferences" constitute trade secrets and are "not ascertainable through proper means," FAC ¶¶ 71, 73, are contradicted by its own disclosures. *See Moreland*, 2019 WL 6771792, at *3 (agreeing that limited partners' names were not trade secrets because they are "readily available through public sources").

Besides information that is public, and by definition, cannot be trade secrets, Xsolla alleges overbroad categories of information that are likewise "insufficient to state a claim." *WalkMe v. Whatfix*, 2024 WL 1221960, at *3 (N.D. Cal. Mar. 21, 2024). "Sweeping," catchall language, like "customer information and pricing," "pricing for suite of tools and services offered," and "sales data," and "algorithms" and other "documents for its products and services," FAC ¶¶ 71, 74, 77, 78, 83, lacks the required specificity. *Synopsys v. ATopTech*, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013); *Unified Grocers v. VM Int'l*, 2020 WL 5370621, at *4 (C.D. Cal. Apr. 8, 2020) (same). Because such alleged trade secrets are apparently "an unknown subset of the indefinite" publicly available information and broad categories of information, Xsolla "does not sufficiently identify anything." *Roe*, 2019 WL 5862594, at *5. Courts routinely dismiss complaints with similar allegations. *Rescue 1 Fin. v. Complete Debt Relief*, 2023 WL 6373884, at *3-4 (C.D. Cal. Aug. 24, 2023) (collecting cases). This Court should do the same.

**b.**     <u>**Xsolla fails to adequately plead independent economic value.**</u>

As this Court has recognized, the second element defining a trade secret is "key": "trade secrets have economic value *because* they are unknown and unknowable to someone else who might find them valuable." *Miranda v. Thiry*, 2021 WL 5760299, at *4 (C.D. Cal. Dec. 2, 2021) (citing 18 U.S.C. § 1839(3)) (emphasis in original); *see also* Cal. Civ. Code § 3426.1(b); *Moreland*, 2019 WL 6771792, at *3 (information that is "'readily obtainable through public sources' is not a trade secret because it cannot derive independent economic value") (citation

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

omitted). That Xsolla "divulged the alleged trade secrets without attempting to consistently protect them counsels against finding economic value." *Wagner Aeronautical v. Dotzenroth*, 2022 WL 6837701, at *6 (S.D. Cal. Oct. 7, 2022).

### c.    Xsolla fails to plead reasonable measures to keep information secret.

According to Xsolla, "[a]ll companies in this industry fiercely protect their intellectual property and customer information." FAC ¶ 20. But Xsolla's pleaded measures are not reasonable, let alone "fierce," especially considering that "Xsolla has nearly 1,000 employees worldwide," *id.* ¶ 26. *See Fail-Safe v. A.O. Smith Corp.*, 674 F.3d 889, 894-95 (7th Cir. 2012) ("[W]hat steps are reasonably necessary . . . is different for a large company than for a small one."). In the FAC, Xsolla added allegations that it limits "access to highly sensitive and trade secret information to employees on a need-to-know basis" and that it has "password protections" for "client information" and "different levels of access." FAC ¶¶ 74, 81. But these allegations ring hollow in light of Xsolla's inconsistent application.

While Xsolla claims it "implements detailed contractual obligations and agreements with its employees and other workers," *id.*, the FAC tells a different story. By Xsolla's own admission, not all employees sign agreements with confidentiality provisions, and that includes employees with "unrestricted access" to Xsolla's "crown jewels." FAC ¶¶ 27, 29, 40, 54 ("*Most* Xsolla employees sign confidentiality agreements.") (emphasis added). Golubitsky allegedly executed an agreement more than *nine years after* joining Xsolla. *Id.* ¶¶ 29-30. Xsolla alleges Golubitsky signed the handbook in 2022, rather than, as one would expect, "[o]ver a decade ago," when he "began working for Xsolla as a Team Lead." FAC ¶¶ 29, 32. This is despite his alleged "access to and knowledge of Xsolla's most sensitive algorithms" "over the course of [those] years." *Id.* ¶ 29.

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

Andry was never required to execute a confidentiality agreement in the *seven years* that he worked at Xsolla—though he allegedly signed a handbook[8] *six years* after he started working at Xsolla, that handbook says "[e]mployees will be required to sign a confidentiality agreement reiterating these obligations," but there is no allegation that he did so. *Id.* ¶ 32. Andry also allegedly "had access to and knowledge of the most sensitive of Xsolla's information, including its research and development into the next generation of payment and billing services and platforms." *Id.* ¶¶ 34, 40. The FAC alleged Tugushev signed an ICA in March 2023, yet this is after he allegedly started taking information in "late-2022." *Id.* ¶¶ 38, 41. The FAC also does not allege Tugushev signed a Mutual Confidentiality Agreement as the ICA indicated. Tugushev also allegedly "had access to and knowledge of the most sensitive of Xsolla's new product development information." *Id.* ¶ 37.

These allegations show Xsolla has not taken "consistent measures to protect the purportedly valuable trade secrets." *Dotzenroth*, 2022 WL 6837701, at *5 (pointing out that documents were emailed to defendant "with no NDA in place"). That Xsolla is unable to demonstrate it has taken consistent measures vis-à-vis these three individuals, who allegedly had "access to the most sensitive and mission-critical Xsolla information," FAC ¶ 40, defeats Xsolla's claim of secrecy and its efforts to protect it. *See Dotzenroth*, 2022 WL 6837701, at *6 ("Plaintiffs did not consistently protect the secrecy of the alleged trade secrets as some copies of the documents included 'proprietary' stamps, while others had no indicia of secrecy.").

Further, the purportedly "trade secret" products are customer-facing. *See, e.g.*, FAC ¶ 22(a). To maintain trade secret status, information disclosed to third

---

[8] An employee handbook, without some manifestation of meeting of minds, does not form an implied contract. *See Zoom Imaging Sols. v. Roe*, 2022 WL 4025293, at *5-6 (E.D. Cal. Sept. 2, 2022).

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

parties must be "provided on an understanding of confidentiality." *VBS Distrib. v. Nutrivita Laboratories*, 811 F. App'x 1005, 1009 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 454 (2020). On the FAC's face, that did not happen here: Xsolla does not allege that it requires its customers and developers to execute any NDAs. *KEMA v. Koperwhats*, 2010 WL 3464708 at *4 (N.D. Cal. Sept. 1, 2010) (finding lack of reasonable measures in the absence of an NDA); *Mason v. Amtrust Fin. Servs.*, 848 F. App'x 447, 450 (2d Cir. 2021) (same); *Farmers Edge v. Farmobile*, 970 F.3d 1027, 1033 (8th Cir. 2020) (same). Unfettered, public access to information negates reasonable measures. *See Woodall*, 2021 WL 2982305, at *11.

Against this background—where Xsolla gave allegedly unlimited access to its "highly sensitive and trade secret information" to employees and customers with no confidentiality agreements in place—Xsolla's newly added allegation of "password protections" and "different levels of access," FAC ¶¶ 74, 81, cannot save the day. Even after taking an opportunity to amend, Xsolla does not allege reasonable measures one would expect from a company of Xsolla's size and geographical footprint and that the law requires for trade secret status.[9] A lack of basic protective measures proves fatal to Xsolla's trade secret claims. Its failure to seek preliminary injunctive relief—despite allegedly being on notice of the alleged misappropriation for months and its claims of "ongoing" harm, *id.* ¶¶ 9, 47, 55—

---

[9] *Nelson Bros. Pro. Real Estate v. Jaussi*, 2017 WL 8220703, at *5 (C.D. Cal. Mar. 23, 2017) (collecting cases) (advising employees of existence of trade secret, limiting access to "need-to-know basis," confidentiality agreements, physical security); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs.*, 923 F. Supp. 1231, 1254 (N.D. Cal. 1995) (access control systems for confidential documents); *In re Ingle Co.*, 116 F.3d 1485, at *4 (9th Cir. 1997) (segregated computer networks); *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304 (2002) (marking documents confidential); *MD Helicopters v. Aerometals*, 2021 WL 978953, at *2 (E.D. Cal. Mar. 16, 2021) (secure server); *Farmers Ins. Exch. v. Steele Ins. Agency*, 2013 WL 3872950, at *15 (E.D. Cal. 2013 July 25, 2013) (confidentiality reminders); *InteliClear v. ETC Glob. Holdings*, 978 F.3d 653, 660-61 (9th Cir. 2020) (encryption).

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

1    suggests a lack of urgency on Xsolla's part to protect its purported trade secrets,

2    further undermining any claim that its measures are reasonable.

### 2.    Xsolla Fails to Plead Misappropriation.

4    Even assuming Xsolla identified, protected, and owned a trade secret, it has

5    not alleged Aghanim misappropriated (*i.e.*, acquired, disclosed, or used) any such

6    trade secrets. Cal. Civ. Code § 3426.1(b)); 18 U.S.C. § 1839(5). <u>First</u>, that Xsolla

7    provides detailed information on its alleged trade secrets on its website, *see supra*

8    Part IV.1.a, undercuts its claims of misappropriation by Aghanim or anyone else.

9    The extensive publicly available information about Xsolla's products and services

10   shows Xsolla's technology is very much "ascertainable through proper means." *Cf.*

11   FAC ¶ 73. For example, Xsolla alleges "the improper use of [its] technology,"

12   based on the similarities between Aghanim's Game Hub Builder and Xsolla's Site

13   Builder. FAC ¶¶ 58, 59. Xsolla's website and marketing materials, however, tout

14   features and benefits for the Site Builder tool. RJN, Ex. G. Because Xsolla failed to

15   "specify what information was made publicly available . . . on [its] website," as

16   opposed to the information it kept secret, "neither the Court nor Defendants can

17   determine what trade secrets are alleged to have been misappropriated by

18   Defendants based on the allegations in the FAC." *Woodall*, 2021 WL 2982305, at

19   *11 (dismissing DTSA and CUTSA claims).

20   <u>Second</u>, Xsolla makes no allegations of improper acquisition by Aghanim

21   itself, nor could it. Xsolla does not allege Aghanim's existence until July 2023, and

22   that is after any potential alleged "acquisition." Indeed, by naming as defendants 50

23   Does, whose identities are "unknown to [it]," FAC ¶ 13, Xsolla failed to allege who

24   acquired what, when, or how. *See Hoffman v. Goli Nutrition*, 2024 WL 230873, at

25   *14 (C.D. Cal. Jan. 17, 2024) (dismissing DTSA claims where, among other things,

26   "nowhere do [p]laintiffs allege who, what, when, or where [defendant] supposedly

27   obtained, reviewed, or stole those same ideas"). Xsolla's addition of Tugushev—

28   who allegedly worked for Xsolla for less than four months—does not cure this

13

pleading deficiency. Having joined Xsolla only in March 1, 2023, Tugushev could not have "downloaded, copied, and/or forwarded" Xsolla's materials "in late-2022," as Xsolla repeatedly alleges. FAC ¶¶ 41, 71. While Xsolla repeatedly groups together allegations against Golubitsky, Andry, and Tugushev, *see, e.g.*, *id*. ¶¶ 40-43, Golubitsky and Andry are not defendants in this action, nor can they be Does because the Does' identity is "currently unknown to Xsolla," *id*. ¶ 13. The FAC thus lacks any particularized allegations about Tugushev or any Does that could support misappropriation.

Third, Xsolla's conclusory statements about Aghanim's alleged improper use, such as "Aghanim . . . continues to use Xsolla confidential and trade secret information," *id*. ¶¶ 8, 83-84, "are not supported by adequate factual allegations." *Space*, 2017 WL 5013363, at *2. They are based "on information and belief," *i.e.*, Xsolla only speculates that any of these things happened. FAC ¶¶ 2, 38, 42, 46 49, 50, 53, 58. This shows Xsolla "likely lacks knowledge of underlying facts to support the assertion[s], and is instead engaging in speculation to an undue degree." *See Delphix Corp. v. Actifo*, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014). The Court should refuse to engage in same. *See Spice Jazz v. Youngevity Int'l*, 2020 WL 6484640, at *5-6 (S.D. Cal. Nov. 4, 2020) (rejecting allegations "on information and belief" and dismissing claim); *Flexpand v. Cream*, 2020 WL 13504975, at *7 (N.D. Cal. Sept. 9, 2020) (same).

Fourth, the only allegations of which Xsolla appears certain are that information must have been stolen due to the "unheard of and unrealistic speed" with which Golubitsky, Andry, and Tugushev established Aghanim. *See* FAC ¶¶ 6, 55, 56. But similarity and speed alone are not sufficient to allege misappropriation. *Cf. E. & J. Gallo Winery v. Instituut Voor Landbouw—En Visserijonderzoek,* 2018 WL 2463869, at *7 (E.D. Cal. June 1, 2018) (requiring allegations of "*exactly how* defendants improperly obtained the alleged trade secret" beyond alleged similarly) (emphasis added); *Rescue 1 Fin., LLC v. Complete Debt Relief, LLC*, 2023 WL

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

6373884, at *5 (collecting cases where speed of new employment and similarity between businesses was not enough to plead misappropriation). The allegations regarding new employment are insufficient—the inevitable disclosure doctrine is not recognized in California because it is inconsistent with the State's strong public policy favoring employee mobility. *See, e.g.*, *Lam Res. Corp. v. Deshmukh*, 157 F. App'x 26, 28 (9th Cir. 2005). Thus, the departures of Golubitsky, Andry, Tugushev, and their launch of Aghanim is insufficient to claim misappropriation. *See Globespan*, 151 F. Supp. 2d at 1235-36. Xsolla has got nothing else.

### 3.    <u>Xsolla Fails to Plead Damages</u>

Finally, for the third essential element of trade secrets misappropriation, *Agency Solutions.Com v. TriZetto Grp.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011), the FAC only has naked assertions of actual damages. *See, e.g.*, FAC ¶ 9 ("Aghanim's wrongdoing is ongoing and has cost Xsolla millions."). Despite its repeated allegations that Aghanim attempted to "improperly solicit Xsolla customers," *id.* ¶¶ 8, 50, 53, 54, 57, 61, 62, and even after amending after the parties met and conferred about this, Xsolla does not say it lost any customers or contracts, its profits declined, any of its customers demanded discounts for Xsolla to be competitive with Aghanim, or the market lost interest in any of the products or services Xsolla offers. To fill this void, Xsolla alleges it had to "reconsider its long-term strategy," "assur[e] customers of Xsolla's security," and "expend resources to implement additional security measures." *Id.* ¶ 9. The Court should be skeptical of Xsolla's attempt to transform prudent business practices in an evolving market of competition into damages.

Xsolla's attempt to rely on the theory of unjust enrichment to show damages likewise fails, as it is entirely circular: "Aghanim unjustly enriched themselves while simultaneously causing substantial harm to Xsolla." *Id.* ¶¶ 86, 90; *contra ChromaDex, Inc. v. Elysium Health*, 2018 WL 4816131, *4 (C.D. Cal. July 26, 2018) (unjust enrichment must be alleged with specificity).

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

The DTSA and CUTSA claims should be dismissed for failing to adequately plead damages.

## B.    Xsolla's CUTSA Claim Preempts Its Common-Law Claims.

Despite the parties' meet-and-confer efforts, the FAC did not even attempt to cure the obvious defect in Xsolla's four state-law claims—they are preempted by CUTSA, the "exclusive remedy" here and should be dismissed with prejudice.[10] *Heieck v. Fed. Signal Corp.*, 2019 WL 6873869, at *2 (C.D. Cal. Nov. 4, 2019); *see also* Cal. Civ. Code § 3426.7. When deciding whether CUTSA preempts a state-law claim, the inquiry is whether it is "based on the same nucleus of facts." *Heieck*, 2019 WL 6873869, at *2. Dismissal is required when state-law counts are "a restatement of the same operative facts supporting trade secret misappropriation." *Gabriel Techs. Corp. v. Qualcomm*, 2009 WL 3326631, at *11 (S.D. Cal. Sept. 3, 2009).

There is no material distinction between the assertions underpinning Xsolla's CUTSA count and its common-law claims. In counts 3 and 4 (intentional and negligent interference with prospective economic advantage), Xsolla alleges Aghanim sought to disrupt its customer relationships "by using improperly obtained and confidential information about the contact information for Xsolla customers." FAC ¶ 98. This merely restates Xsolla's trade secret misappropriation claims, triggering preemption. *See MedImpact Healthcare Sys. v. IQVIA*, 2020 WL 5064253, at *19 (S.D. Cal. 2020 Aug. 27, 2020) (finding preemption where "the only way Defendants were able to interfere with Plaintiffs' customer relationships was through the misappropriation of trade secrets").

---

[10] This should be the outcome, regardless of how this Court rules on Aghanim's motion to dismiss the CUTSA claim. *See Sylabs v. Rose*, 2023 WL 8813517, at *9 (N.D. Cal. Dec. 19, 2023) (finding CUTSA preemption even though plaintiff failed to plead the existence of a trade secret).

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

Count 5 (intentional interference with contractual relationships) fails for the same reason. Xsolla claims in a blanketed fashion Aghanim "knew of [Xsolla's] contracts" with customers and "intended to disrupt [their] performance." FAC ¶ 112. These allegations rely on Aghanim's alleged trade secret misappropriation of customer information, as that is the only alleged wrongdoing Xsolla attempts (but fails) to detail. As such, the intentional interference claim "relies on the same allegations . . . and is thus preempted by CUTSA." *See, e.g.*, *Western Air Charter v. Schembari*, 2017 WL 10638759, at *3 (C.D. Cal. Oct. 6, 2017).

Count 6 (unfair competition under California's Unfair Competition Law (UCL)) likewise is preempted. This claim is predicated upon Aghanim's alleged use of Xsolla's trade secrets to solicit customers and start its business.[11] For example, Xsolla's allegation under the unfair and unlawful prongs of UCL directly depends upon Aghanim's alleged use of "confidential customer information" to solicit Xsolla's customers. FAC ¶ 117. Xsolla also alleges Aghanim misrepresented its "independent capabilities to develop video game payment and support platforms," *i.e.*, Aghanim misappropriated Xsolla's information to develop those capabilities. *Id*. Similarly, claims that Aghanim "unjustly enriched themselves," again, implicates trade secret misappropriation through the alleged improper use and disclosure of Xsolla's "systems . . . setting up a competing [] platform business, and soliciting and poaching Xsolla's customers." *Id.* ¶¶ 86, 91. As for Xsolla's allegations under the UCL's fraudulent prong, it alleges either that Aghanim improperly used Xsolla information, or it alleges contradictorily that, if Aghanim "is not capable of its advertised features," then it "falsely and misleadingly advertised its capabilities." *Id.* ¶¶ 117, 118. Either way, Xsolla's allegations of unfair competition are based on its trade secret misappropriation allegations. *See IQVIA*, 2020 WL 5064253, at *20 (holding that all of the alleged "'unlawful acts'

---

[11] To the extent Xsolla's UCL claim also includes allegations dependent upon a theory of trademark infringement, it must fail for other reasons explained below.

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

1    are also necessarily preempted by CUTSA").

2        Nothing remains of Xsolla's state-law claims once the trade secret allegations

3    are stripped away. *Waymo LLC v. Uber Tech.*, 256 F. Supp. 3d 1059, 1062 (N.D.

4    Cal 2017) ("At the pleadings stage, the supersession analysis asks whether, stripped

5    of facts supporting trade secret misappropriation, the remaining factual allegations

6    can be reassembled to independently support other causes of action.") (internal

7    citation omitted). They should be dismissed.

8        **C.    Xsolla's State-Law Claims Fail to Plead a Claim.**

9        Xsolla's state-law claims also fail to allege a claim upon which relief can be

10   granted. The fundamental flaw with Xsolla's fallback common-law claims (counts

11   3 through 6) is that Xsolla has not offered sufficient facts showing damages.

12   Additionally, Xsolla's UCL claim lacks any plausible facts demonstrating

13   Aghanim's business practices are unlawful, unfair, or fraudulent.

14       **1.    Xsolla Failed to Adequately Plead Injury or Damages.**

15       Interference with a prospective economic advantage (counts 3 and 4) requires

16   plausible facts showing "actual disruption" of a client relationship and "economic

17   harm . . . proximately caused by the acts of the defendant." *Korea Supply Co. v.*

18   *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-54 (2003). Xsolla, however, relies

19   on uncertainties and speculation courts disfavor. *See Silicon Knights v. Crystal*

20   *Dynamics*, 983 F. Supp. 1303, 1311-12 (N.D. Cal. 1997) (dismissing claims based

21   upon "speculative expectancies"). It claims Aghanim "disrupt[ed] . . . relationships

22   by attempting to steal Xsolla's existing customers," FAC ¶¶ 99, 107, but asserts no

23   facts to support that claim. Nor does Xsolla offer any detail as to how Aghanim's

24   conduct was a but-for cause for any *actual disruption* of customer relationships.

25   Such conclusory statements are inadequate. *See, e.g.*, *Silicon*, 983 F. Supp. at 1312.

26   A reference to "potential" customers, FAC ¶ 108, does not save these claims.

27   Courts routinely dismiss interference claims in the absence of a preexisting

28   business relationship. *See, e.g.*, *Silicon*, 983 F. Supp. at 1312.

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

Similarly, to plead intentional interference with contract (count 5), Xsolla had to allege, among other elements, "a valid contract" between Xsolla and a third party and that Aghanim committed an intentional act "designed to induce a breach" or disrupt that relationship; "actual breach or disruption of the contractual relationship"; and "resulting damage." *Id.* at 1309. Xsolla asserts without support that "Aghanim's conduct made performance of . . . contracts more expensive or difficult." FAC ¶ 112. But Xsolla does not name an intentional act.[12] This alone is reason to dismiss. Even if Xsolla could point to an intentional act by Aghanim, it has not provided any facts showing actual disruption to Xsolla's customer relationships, a decrease in sales, or any complication to performance of a contractual duty as a result of Aghanim. *Contra Silicon*, 983 F. Supp at 1312 ("[N]o allegation that sales of a particular software product . . . decreased."); *cf.*, *Zoom Imaging Sols. v. Roe*, 2020 WL 489238 at *3 (E.D. Cal. Jan. 30, 2020) (alleging "at least 74" customers were lost).

Finally, to establish standing under UCL (count 6), Xsolla had to show it "suffered injury in fact" and "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. To do so, Xsolla had to establish (1) it suffered an "injury in fact" like "lost money or property," and (2) this was caused by the unfair business practice or false advertising at issue. *Pirozzi v. Apple*, 966 F. Supp. 2d 909, 919 (N.D. Cal. 2013). However, as in its interference claims, Xsolla provides no facts supporting economic injury and instead defaults to the conclusory contention its harm "is ongoing" to the tune of "millions of dollars." FAC ¶ 9. The Rule 8 pleading standard requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678.

---

[12] The "acts of setting up a competing business are not in and of themselves intentional acts designed to induce a breach or disrupt contractual relationships." *Schembari*, 2017 WL 10638759, at *3.

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

1

## 2.     <u>Xsolla Fails to Plausibly Plead Its UCL Claim.</u>

2       Xsolla's UCL claim should also be dismissed because it lacks plausible facts

3 demonstrating Aghanim's business practices are unlawful, unfair, or fraudulent,

4 Bus. & Prof. Code § 17200. <u>First</u>, the UCL's "unlawful" prong "borrows violations

5 of other laws . . . and makes those unlawful practices actionable under the UCL."

6 *Berryman v. Merit Prop. Mgmt.*, 152 Cal. App. 4th 1544, 1554 (2007) (citation

7 omitted). As detailed in *supra* Part IV.A and *infra* Part IV.D, Xsolla failed to allege

8 a DTSA, CUTSA, or Lanham Act violation. Thus, there is no violation-of-law

9 "predicate for stating a cause of action" under UCL. *See Berryman*, 152 Cal. App.

10 4th at 1554.

11       <u>Second</u>, in the context of a UCL claim between competitors, a business

12 practice is "unfair" only if it threatens violation of antitrust laws or otherwise

13 "threatens or harms competition." *Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*, 20

14 Cal. 4th 163, 187 (1999).[13] Xsolla alleges nothing of the sort. It simply states

15 Aghanim "unfairly and unlawfully compete[s] in the . . . market." FAC ¶ 61. A

16 mere recitation of the element is not enough to state a claim.

17       <u>Third</u>, the UCL's fraudulent prong requires Xsolla to show "members of the

18 public are likely to be deceived" by Aghanim's business practices. *Berryman*, 152

19 Cal. App. 4th at 1556. This requires Fed. R. Civ. P. 9(b) specificity; a complaint

20 that "alleges no facts showing that any misrepresentation was made to [plaintiff] by

21 any particular defendant, or that [plaintiff] relied to [its] detriment on any such

22 misrepresentation" fails to meet that standard. *Harris-Scott v. Immelt*, 2013 WL

23 369013, at *4 (N.D. Cal. Jan. 29, 2013). Xsolla's allegations that Aghanim "falsely

24 and misleadingly advertised its capabilities," FAC ¶ 118, and confused customers

25 by displaying Xsolla's name on its website, *id.* ¶ 126, hardly rises to the heightened

26

---

27 [13] In cases between competitors, courts apply a different standard for unfairness
than in cases involving consumers. *Drum v. San Fernando Valley Bar Ass'n*, 182
28 Cal. App. 4th 247, 253 (2010).

1   pleading standard under Rule 9(b).

2        D.    **Xsolla Fails to State a Claim for Trademark Infringement.**

3        Xsolla failed to state a federal trademark infringement claim because it only

4   alleges nominative fair use of the company name. A Lanham Act[14] claim requires

5   allegations that defendant used the mark as a trademark, and such use "is likely to

6   cause consumer confusion." *Rearden v. Rearden Commerce*, 683 F.3d 1190, 1202

7   (9th Cir. 2012); *see also Murray v. Cable Nat'l Broad.*, 86 F.3d 858, 861 (9th Cir.

8   1996), *as amended* (Aug. 6, 1996). Here, Aghanim's alleged use of Xsolla's mark

9   is permissible and does not cause confusion.

10       The only factual allegations regarding Aghanim's use of the term "Xsolla"

11  are to the company's name. *See, e.g.*, FAC ¶¶ 62, 125; *see also id*. at Ex. A

12  ("Golubitsky, Co-Founder, Co-CEO, 1,7 Years CEO @ Xsolla, 9,1 Years CTO @

13  Xsolla."); *id*. at Ex. B ("Aghanim . . . founded by former CEO and CTO of Xsolla .

14  . . ."). Likewise, Aghanim's website allegedly "displays Xsolla's name," FAC

15  ¶ 126, only in the context of Aghanim's executives' previous work experience.

16       The Lanham Act "allows use of another's mark where the use is 'otherwise

17  than as a trade or service mark,'" as alleged here. *In re Dual-Deck Video Cassette*

18  *Recorder Antitrust Litig.*, 11 F.3d 1460, 1467 (9th Cir. 1993) (citing 15 U.S.C.

19  § 1115(b)(4)). This practice is called "nominative" fair use as it names Xsolla itself

20  and is not intended to identify Aghanim's products or services. Because such use is

21  "not likely to confuse," the traditional likelihood of confusion factors do not even

22  apply. *Stevo Design v. SBR Mktg.*, 919 F. Supp. 2d 1112, 1124 (D. Nev. 2013)

23  (citing *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir.2002)).

24       Thus, if a complaint only alleges nominative fair use, "plaintiff has failed to

25  allege likelihood of confusion," and as a result, "failed to state a claim for which

26  relief may be granted." *Id*. (citing *KP Permanent Make–Up Inc. v. Lasting*

27  ───────────────

28  [14] 15 U.S.C. § 1114.

                                    DEFENDANT AGHANIM'S
                                    MOTION TO DISMISS
                                    2:24-cv-02116-ODW-AGR

*Impression I*, 543 U.S. 111, 125 (2004)). District courts in the Ninth Circuit routinely dismiss such complaints. *See Gibson Brands v. John Hornby Skewes & Co.*, 2015 WL 4651250, at *4 (C.D. Cal. Aug. 4, 2015) (collecting cases dismissing claims of nominative fair use); *see also Architectural Mailboxes v. Epoch Design*, 2011 WL 1630809, at *4 (S.D. Cal. Apr. 28, 2011); *Dual–Deck*, 11 F.3d at 1466–67.

Here, Aghanim's alleged use of the Xsolla's mark does not identify the source of Aghanim's products or services; it is used only to describe the founders' prior employer, displaying Xsolla's name in its founders' website biographies, not to brand its products or services under the "Xsolla" mark. *See Hensley Mfg. v. ProPride*, 579 F.3d 603, 610 (6th Cir. 2009) (rejecting likelihood of confusion argument where a trailer hitch's trademark, HENSLEY, bore its designer's name, and was used by defendant not as a source identifier for new product but to identify its designer).

That Xsolla alleges Aghanim's website "is 'meta tagged' with Xsolla" because it mentions the founders' prior work experience three times, FAC ¶ 62, cannot save its claim. Courts in this district have been clear: nominative fair use as a metatag is not trademark infringement. *See Moore v. Doe*, 2020 WL 6804508, at *3 (C.D. Cal. Oct. 13, 2020) (applying nominative fair use to metatags).

## V.    <u>CONCLUSION</u>

For the reasons set forth above, the Court should dismiss the FAC in its entirety with prejudice and without leave to amend.

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR

1 | Dated:  May 3, 2024

Respectfully submitted,

2 | ORRICK, HERRINGTON & SUTCLIFFE

3

4 | By:  */s/ Diana Rutowski*
DIANA RUTOWSKI (SBN 233878)
5 | drutowski@orrick.com
Orrick, Herrington & Sutcliffe LLP
6 | 1000 Marsh Road
Menlo Park, CA  94025
7 | Telephone: +1 650-614-7685
Facsimile: +1 650-614-7401

8 | DAVID P. FUAD (SBN 265193)
9 | dfuad@orrick.com
Orrick, Herrington & Sutcliffe LLP
10 | 355 S. Grand Avenue, Suite 2700
Los Angeles, CA  90071
11 | Telephone: +1 213-629-2369
Facsimile: +1 213-612-2499

12 | JAMES H. MCQUADE (*pro hac vice* pending)
13 | jmcquade@orrick.com
Orrick, Herrington & Sutcliff LLP
14 | 51 W. 52nd Street
New York, NY 10019
15 | Telephone: +1 212-506-5000
Facsimile: +1 212-506-5151

16

17 | KRISTINA ARIANINA (*pro hac vice* pending)
18 | karianina@orrick.com
2100 Pennsylvania Avenue, N.W.
19 | Washington, DC 20005
Telephone: +1 202-339-8400
20 | Facsimile: +1 202-339-8500

21 | *Attorneys for Defendant*
Aghanim Inc.

22

23

24

25

26

27

28

23

1

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Aghanim, Inc., certifies that this brief contains 6,973 words, which complies with the word limit of L.R. 11-6.1.


Dated:  May 3, 2024                    By:  */s/ Diana Rutowski*
                                            DIANA RUTOWSKI (SBN 233878)
                                            drutowski@orrick.com
                                            Orrick, Herrington & Sutcliffe LLP
                                            1000 Marsh Road
                                            Menlo Park, CA  94025
                                            Telephone: +1 650-614-7685
                                            Facsimile: +1 650-614-7401

                                            *Attorney for Defendant*
                                            Aghanim Inc.

DEFENDANT AGHANIM'S
MOTION TO DISMISS
2:24-cv-02116-ODW-AGR