**O**

# United States District Court
# Central District of California

| | |
|---|---|
| XSOLLA (USA), INC., | Case № 2:24-cv-02116-ODW (AGRx) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AGHANIM INC.'S MOTION TO DISMISS [32]** |
| AGHANIM INC. et al., | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff Xsolla (USA), Inc. ("Xsolla") brings this action alleging violation of federal and state trade secrets statutes, federal trademark infringement, interference with prospective economic advantage and contract, unfair competition, and breach of contract against Defendant Aghanim, Inc. ("Aghanim") and Defendant Tugushev Albert Tagirovich ("Tagirovich").    (First Am. Compl. ("FAC"), ECF No. 25.) Aghanim moves to dismiss Xsolla's claims against it pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6).    (Mot. Dismiss ("Mot." or "Motion"), ECF No. 32.)   For the reasons discussed below, the Court **GRANTS IN PART WITH LEAVE TO AMEND** and **DENIES IN PART** Aghanim's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    REQUEST FOR JUDICIAL NOTICE

Concurrently with its Motion, Aghanim requests the Court take judicial notice of the fact that the content of certain webpages is publicly disclosed on the internet. (Aghanim Req. Judicial Notice ("RJN") at 1–2, ECF No. 33.)  Elsewhere, Aghanim requests the Court take "judicial notice of the fact Xsolla makes the information contained in Exhibits A through P publicly available." (*Id.* at 3.)

Specifically, Aghanim asks the Court take judicial notice of the following: (1) twenty-six webpages from Xsolla.com, (*id.* Exs. A–I, K–O, ECF Nos. 33-1 to 33-9, 33-11 to 33-15), (2) two webpages from Github.com/Xsolla, (*id.* Ex. J, ECF No. 33-10), and (3) Google.com search results for "Xsolla is an authorized global distributor of," (*id.* Ex. P, ECF No. 33-16).  Xsolla does not oppose the request or question the authenticity of the webpages.  (*See generally* Opp'n Mot. ("Opp'n"), ECF No. 44.)

The Court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Courts routinely take judicial notice of evidence from an opposing party's publicly available website where the statements "are not necessarily being introduced for their truth but instead to show that Plaintiff had published this information." *Nelson Bros. Pro. Real Est. LLC v. Jaussi*, No. 8:17-cv-00158-DOC (JCGx), 2017 WL 8220703, at *3 (C.D. Cal. Mar. 23, 2017) (citing *Wolf v. Hewlett Packard Co.*, No. 5:15-cv-01221-BRO (GJSx), 2016 WL 7743692, at *2–3 (C.D. Cal. Sept. 1, 2016)).  Accordingly, the Court **GRANTS** Defendant Aghanim's request for judicial notice of the screenshots of Xsolla's publicly available website, (RJN Exs. A–I, K–O), for the sole fact that Xsolla has made the information publicly available.

However, the Court declines to take judicial notice of the GitHub webpages and Google.com search results.  (*Id.* Exs. J, P.)  First, the Court is unable to readily

determine that Xsolla, as opposed to a third party, made this information publicly available.  Second, courts are reluctant to take judicial notice of Google search results because they "are continually changing and thus cannot 'be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Novation Ventures, LLC v. J.G. Wentworth Co., LLC*, No. 2:15-cv-00954-BRO (PJWx), 2015 WL 12765467, at *3 (C.D. Cal. Sept. 21, 2015) (quoting Fed. R. Evid. 201(b)).  Third, neither of these webpages would "affect the outcome of this motion." *Migliori v. Boeing N. Am., Inc.*, 97 F. Supp. 2d 1001, 1004 n.1 (C.D. Cal. 2000).  Therefore, the Court **DENIES** Aghanim's request to take judicial notice of the screenshots of the GitHub webpages and Google search results.  (*See* RJN Exs. J, P.)

### III.    BACKGROUND[2]

Xsolla is a global video game billing and distribution solution company that provides video game developers and publishers with payment, billing, distribution, support, and marketing technology for cross-platform video game businesses.  (FAC ¶ 19.)  Xsolla offers customers use of various unique technologies, including:

- worldwide compliance tax algorithms that allow video game developers and publishers to charge and collect taxes from customers and pay those taxes to government entities;

- Pay Station, a checkout tool that enables fast, efficient transactions;

- an algorithm that identifies fraud;

- Site Builder, a tool that enables developers to create websites that include web-access for in-game purchases;

- Web Shop, a tool that enables purchases outside of the Apple App Store or Google Play Store;

- In-Game Services, a set of algorithms that enable developers and producers to set-up in-game purchase options;

---

[2] All factual references derive from Xsolla's FAC or attached exhibits, unless otherwise noted.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that well-pleaded factual allegations are accepted as true for purposes of a motion to dismiss).

- Personalization Tools, a series of tools that enable customers to receive player feedback and to optimize monetization; and

- a series of tools that assist with monetization.

(*Id.* ¶¶ 21–22.)

Constantin Andryushchenko ("Andry"), Konstantin Golubitsky ("Golubitsky"), and Tagirovich all previously worked at Xsolla (collectively "Aghanim's Founders"). (*Id.* ¶¶ 29, 34, 36, 44–46.)  Golubitsky started as a Team Lead more than a decade ago, later serving as CTO and then CEO of Xsolla.  (*Id.* ¶ 29.)  Andry began working at Xsolla in 2016 before becoming CEO of Xsolla Labs, an Xsolla subsidiary.  (*Id.* ¶ 34.) Tagirovich joined as CTO of Xsolla Labs in 2023.  (*Id.* ¶ 36.)

Most Xsolla employees sign confidentiality agreements, and all employees sign Xsolla's employee handbook.  (*Id.* ¶ 27.)  Also, each of Aghanim's Founders signed documents with confidentiality clauses.  (*Id.* ¶¶ 30, 35, 38.)  Golubitsky signed an employment agreement that had a confidentiality clause upon his promotion to CTO in 2020.  (*Id.* ¶¶ 30–31.)  In 2022, Golubitsky and Andry both signed an employee handbook, which warns that employees who improperly disclose confidential information "may be subject to disciplinary action, up to and including termination of employment."  (*Id.* ¶ 32.)  When Tagirovich started at Xsolla, he signed an agreement stating that neither Xsolla nor Tagirovich "shall disclose any confidential information of the other" and that both parties "acknowledge entering into a separate nondisclosure agreement relating to the confidential information."  (*Id.* ¶ 38.)

While at Xsolla, Aghanim's Founders had access to Xsolla's most sensitive customer, product, pricing, and technical information.  (*Id.* ¶¶ 29, 34, 40.)  Xsolla believes that in late-2022 through June 2023, Aghanim's Founders downloaded, copied, and/or forwarded Xsolla's internal and highly sensitive documents for themselves, including information relating to Xsolla's technologies, customers, and pricing.  (*Id.* ¶ 41.)  Aghanim's Founders used these trade secrets and confidential information to found Aghanim, a competitor of Xsolla.  (*Id.* ¶ 46.)

Xsolla contends that Aghanim used Xsolla's confidential information to rapidly develop its video game service and payment platform, which includes offerings identical to Xsolla's.  (*Id.* ¶¶ 49, 55–57, 59.)  Xsolla claims that Aghanim could not have developed its offerings so quickly without using Xsolla's trade secrets and confidential information.  (*Id.* ¶¶ 58, 60, 64.)

Xsolla alleges that Aghanim targeted Xsolla's customers by stealing its customer-specific pricing information and using it to undercut Xsolla's pricing.  (*Id.* ¶ 54.)  Xsolla further claims that Aghanim used Xsolla's customer information to interfere with Xsolla's customer relationships.  (*Id.* ¶ 61.)

Just a few months after Aghanim's Founders left Xsolla, Aghanim began soliciting investors and advertising itself as the "new Xsolla."  (*Id.* ¶ 48.)  Aghanim's advertising prominently featured Aghanim's Founders' past employment.  (*Id.* ¶ 52.)  Aghanim included Xsolla in its materials and advertised similar technology and services as Xsolla, leading Xsolla's customers to question whether the companies were affiliated.  (*Id.* ¶¶ 53, 62.)  Some Xsolla customers inquired into the relationship between the companies, resulting in awkward conversations about Aghanim and its founders and significant efforts to address customer confusion.  (*Id.* ¶ 53.)  Aghanim also meta-tagged its website with "Xsolla" so that its site would appear in search results related to Xsolla.  (*Id.* ¶ 62.)

On March 14, 2024, Xsolla filed a complaint against Aghanim.  (Compl., ECF No. 1.)  On April 19, 2024, Xsolla filed its FAC, which, among other things, added Tagirovich as a defendant.  (FAC ¶ 12.)  Xsolla alleges (1) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C § 1836, *et seq.*, (2) violation of the California Uniform Trade Secrets Act ("CUTSA"), California Civil Code section 3426, (3) intentional interference with prospective economic advantage, (4) negligent interference with prospective economic advantage, (5) intentional interference with contract, (6) violation of California's Unfair Competition Law ("UCL"), California Business and Professional Code section 17200, *et seq.*, (7) federal trademark

infringement in violation of the Lanham Act, 15 U.S.C. § 1114, and (8) breach of contract.  (FAC ¶¶ 56–114.)  Aghanim now moves to dismiss all claims made against it in the FAC.[3]  (Mot.)  The Motion is fully briefed.  (Opp'n; Reply, ECF No. 47.)

## IV.    LEGAL STANDARD

### A.    Motion to Dismiss

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).  However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### B.    Leave to Amend

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment.

---

[3] Xsolla brings all but the eighth cause of action against Aghanim.  Xsolla asserts six causes of action against Tagirovich.  As of the time of this Order, Tagirovich has not responded to the FAC.

*See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## V.    DISCUSSION

Aghanim moves to dismiss each of the seven causes of action Xsolla asserts against it. Aghanim argues that Xsolla fails to sufficiently allege its first and second claims for misappropriation. Next, Aghanim contends that the CUTSA preempts Xsolla's third, fourth, and fifth claims for interference, and its sixth claim for violation of the UCL. Aghanim also argues that Xsolla fails to adequately plead these claims. Finally, Aghanim asserts that Xsolla's seventh claim for federal trademark infringement fails because Aghanim's use of Xsolla's mark was permissible. The Court addresses each cause of action in turn.

## A.    Misappropriation Claims (Counts I and II)

Xsolla alleges Aghanim misappropriated trade secrets in violation of the DTSA and CUTSA. (FAC ¶¶ 66–93.) These statutes "share the same pleading requirements for the identification of trade secrets." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018); *see also InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) ("Courts have analyzed these claims together because the elements are substantially similar."). To assert a trade secret misappropriation claim, a plaintiff must allege that: (1) the plaintiff owned a trade secret, (2) the defendant misappropriated, which (3) damaged the plaintiff. *InteliClear, LLC*, 978 F.3d at 657–58. Aghanim moves to dismiss misappropriation claims for Xsolla's failure to adequately plead each of these elements. (Mot. 6–13.)

*1.    Trade Secrets*

To adequately plead the existence of a trade secret, a plaintiff must describe the trade secret with sufficient particularity.  *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1047 (N.D. Cal. 2020).  Additionally, a plaintiff must allege that the information derives independent economic value from its secrecy and the owner has "taken reasonable measures to keep such information secret."  18 U.S.C. § 1839(3)(A)–(B); *see also* Cal. Civ. Code. § 3426.1(d)(1)–(2).

a.  Sufficient Particularity

"[A] plaintiff need not spell out the details of the trade secret."  *Cisco Sys., Inc.*, 462 F. Supp. 3d at 1047.  However, "it must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade . . . , and to permit the defendant to ascertain at least the boundaries within which the secret lies."  *Id.* (internal quotation marks omitted) (collecting cases). "Allegations that set out purported trade secrets in broad, categorical terms that are merely descriptive of the types of information that generally may qualify as protectable trade secrets' are insufficient to state a claim."  *Novation Sols., Inc. v. Issuance Inc.*, No. 2:23-cv-00696-WLH (KSx), 2023 WL 5505908, at *7 (C.D. Cal June 27, 2023) (emphasis omitted).  A plaintiff may also "not simply rely upon 'catchall' phrases or identify categories of trade secrets they intend to pursue at trial." *InteliClear, LLC*, 978 F.3d at 658.

Xsolla alleges fourteen categories of purported trade secrets:

> (a) customer lists, customer-specific pricing information, and other customer information; (b) pricing strategies for app purchases outside of the Apple App Store and the Google Play store; (c) Pay Station (plug-in video game checkout tool); (d) worldwide tax compliance algorithms; (e) Site Builder platform; (f) Personalization Tools; (g) In-Game Services; (h) Web Shop; (i) Marketing Solutions; (j) Xsolla Login; (k) Player segmentation and analysis algorithms; (l) Xsolla's game developer hiring tool for its customers; (m) Xsolla's marketing agency matching tool; and (n) Xsolla's integration platform for third-party apps.

(FAC ¶ 67.)  Xsolla groups these alleged trade secrets into two types: (1) technical information and (2) customer information and pricing.  Xsolla describes the misappropriated technical information to include the "research, development, testing, algorithms, specifications, and applications" associated with its:

> (i) worldwide tax compliance algorithm; (ii) Pay Station; (iii) Site Builder platform[4]; (iv) Personalization Tools; (v) In-Game Services; (vi) Web Shops; (vii) Marketing Solutions; (viii) Player segmentation and analysis algorithm; (ix) game developer hiring tool for its customers; (x) marketing agency matching tool; and (xi) integration platform for third-party apps.

(*Id.* ¶ 77.)  And Xsolla alleges Aghanim misappropriated its following customer information and pricing:

> (i) proprietary pricing structure for regular, high-volume, and long-term customers; (ii) customer list and preferences information; (iii) information regarding confidential contracts with customers; (iv) pricing for its suite of tools and services offered to video game developers and producers; (v) customer feedback about various services and pricing; (vi) customer pitches and customized presentations made to potential customers; and (vii) sales data and insights derived therefrom.

(*Id.* ¶ 71.)

While Xsolla is correct that it must only sufficiently plead one trade secret for its claims to survive, (Opp'n 10–11), the Court nevertheless evaluates the technical information trade secrets before turning to customer information and pricing.

### i.    *Technical Information*

Aghanim argues Xsolla's technical information are not trade secrets because they "are disclosed at length in its publicly available information."  (Mot. 7.)  In support, Aghanim cites numerous webpages from Xsolla's website that describe the features of its various offered applications and services.  (*Id.* (citing RJN Exs. A–K).)  Xsolla counters that its FAC "makes clear that Xsolla's trade secrets are its non-public

---

[4] Xsolla also identifies the "technical code information" associated with its Site Builder platform. (FAC ¶ 77c.)

research and development, and its back-end technical coding and algorithms that cause the service offerings to work." (Opp'n 11.)

The Court agrees with Xsolla. Xsolla alleges misappropriation of the "research, development, testing, algorithms, specifications, and applications associated with" each category of technical information. (FAC ¶ 77.) None of Aghanim's exhibits disclose the research, development, testing, algorithms, or specifications of the alleged trade secrets. (*See* RJN Exs. A–K.) And while, on its own, the term "applications" may be viewed to include the publicly available information about the uses of these tools, Xsolla elsewhere makes clear that it is referring to back-end technologies and information used to make the specified tools. (*See, e.g.*, FAC ¶ 59d ("Aghanim's billing engine tool is based on Xsolla's trade secret and confidential information on how to develop such a billing tool.").) In other words, Xsolla targets its misappropriation claims at Aghanim's use of Xsolla's internal, proprietary information to create tools like Xsolla's, not at Aghanim's offering of similar tools. (*See id.* ¶ 47 ("Xsolla did not have many concerns because it assumed that Aghanim would take years to lawfully build a platform similar to Xsolla's.").)

With one exception, the Court finds Xsolla alleges its technical information trade secrets with sufficient particularity. Xsolla does not simply allege its trade secrets *include* "research, development, testing, algorithms, specification, and applications." (FAC ¶ 77); *see Rescue 1 Fin., LLC v. Complete Debt Relief, LLC*, No. 8:23-cv-00982-CJC (KESx), 2023 WL 6373884, at *4 (C.D. Cal. Aug. 24, 2023), (finding "research and development of new or improved products and services," "technical data," and "software data," to be "simply too broad for the Court—or Defendants—to understand what they mean"), *opinion clarified*, 2024 WL 3081923 (C.D. Cal. Jan. 29, 2024). Rather, Xsolla goes further by identifying specific technologies whose research, development, testing, algorithms, specification, and applications *are* trade secrets. (*See* FAC ¶ 77); *e.g.*, *Advanced BioTech, LLC v. BioWorld USA, Inc.*, No. 1:19-cv-01215-NONE (SKOx), 2020 WL 5797929, at *4

(E.D. Cal. Sept. 29, 2020) (finding plaintiff sufficiently pleaded trade secrets where complaint identified formulations of specific products); *Calsoft Labs, Inc. v. Panchumarthi,* No. 19-cv-04398-NC, 2020 WL 512123, at *7 (N.D. Cal. Jan. 31, 2020) (distinguishing insufficient allegations concerning "proprietary training data and programs valuable in the field of technology consulting and staffing" from sufficient allegations that "allow[] the inference that the source code and other data were related to" specific products or services).

In contrast to the well-pleaded allegations supporting most of the technical information trade secrets, Xsolla does not sufficiently allege its Xsolla Login is a trade secret. In its FAC, Xsolla mentions this tool twice, and fails in either instance to provide more than a conclusory allegation that Xsolla Login is a trade secret. (*See* FAC ¶¶ 59b, 77j.) Therefore, the Court finds that Xsolla describes its technical information with sufficient particularity, excepting the Xsolla Login tool.

### ii. *Customer Information and Pricing*

Similar to its arguments regarding the technical information, Aghanim contends Xsolla's customer information and pricing are not trade secrets because Xsolla has publicized this information. With respect to Xsolla's customer lists, Aghanim cites Xsolla's website, which identifies numerous customers and the Xsolla products those customers use. (RJN Exs. M–N.)[5] As to Xsolla's pricing information, Aghanim notes Xsolla's website highlights products used by "dozens of customer[s]." (Mot. 8 (citing RJN Ex. N).) Aghanim also cites the "5%. ONE PRICE." advertisement on Xsolla's website to argue pricing information is not a trade secret. (RJN Ex. O; *see* Mot. 8.)

Xsolla does not allege that a list of its customers in isolation—without additional client information—is a trade secret. (*See* FAC ¶ 69 ("This information is not merely a list of actual and potential customers.").)[6] Instead, Xsolla contends that

---

[5] Aghanim also cites Google search results, (RJN Ex. P), which the Court declines to judicially notice.

[6] In its Opposition, Xsolla indicates it does not consider "a list of all current and former Xsolla customers" to be trade secrets. (Opp'n 22.)

client-specific information, such as contact information, pricing, and preferences, are trade secrets. (*Id.* ¶¶ 69–71.)  With respect to customer contact information, the RJN exhibits do not "show[] that someone could also obtain those clients' direct contact information." *Wixen Music UK Ltd. v. Transparence Ent. Grp. Inc.*, No. 2:21-cv-02663-MEMF (MRWx), 2023 WL 9004931, at *8 (C.D. Cal. Oct. 10, 2023).  Also, that Xsolla may highlight products used by some of its customers does not mean it has publicized all the products used by those customers. *See id.*  Moreover, while Xsolla appears to advertise "one price for everything" on its website, (RJN Ex. O), the Court finds Xsolla alleges that its customized customer pricing is not publicly available through its claims that it "customize[s] its pricing," (FAC ¶ 69), and "has negotiated special, preferred pricing with long-term and high-volume customers," (*id.* ¶ 70).

Aghanim next contends that Xsolla fails to allege its customer information and pricing with sufficient particularity to qualify as a trade secret. (Mot. 9.)  Various courts have evaluated this issue within this very context.  For example, in *Vendavo, Inc. v. Price f(x) AG*, the court held that plaintiff failed to allege its trade secret claim with sufficient particularity where the plaintiff alleged its trade secrets to include:

> source code, customer lists and customer related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives, 'negative knowhow' learned through the course of research and development, and other information related to the development of its price-optimization software, including ideas and plans for product enhancements.

No. 17-cv-06930-RS, 2018 WL 1456697, at *3–4 (N.D. Cal. Mar. 23, 2018).  In comparison, in *Navigation Holdings, LLC v. Molavi*, the court found plaintiffs had sufficiently alleged trade secrets that they described as:

> confidential information about their clients in their files and databases. This information is not only a list of potential clients, but a compilation of price information about proven clients that often includes each client's name, address, telephone number, contact person and private email address. Plaintiffs' database contains client information that Plaintiffs

have gathered over the entire history of their operations, which span not only many years but hundreds of thousands of hours of research, including prior order/pricing information. Many of the clients are regular and frequent consumers of Plaintiffs' services and have been so for years.

445 F. Supp 3d 69, 77 (N.D. Cal. 2020).  Here, some of Xsolla's allegations are like the detailed descriptions in *Navigation Holdings*, while others are simply generalized categories of information like those in *Vendavo*.

Xsolla provides detailed descriptions of its pricing, alleging "[i]t has spent countless hours developing confidential and proprietary pricing schemes tailored to the needs of the individual video game developers and publishers . . . which took many years and significant effort and testing to develop."  (FAC ¶ 25.)  It does the same for its customer information, which it describes as "compilation of information about established customers that includes information such as each customer's name, specific contact persons, specific contact information, including addresses, telephone numbers, and emails, and details about the customer's products and how they use Xsolla's offerings."  (*Id.* ¶ 69.)

Thus, the Court finds that Xsolla sufficiently alleges the following customer information and pricing trade secrets: (i) proprietary pricing structure for regular, high-volume, and long-term customers; (ii) customer list[7] and preferences information; (iii) information regarding Xsolla's confidential contracts with customers; (iv) pricing for its suite of tools and services offered to video game developers and producers; and (v) Xsolla's customer feedback about various services and pricing.  (*Id.* ¶ 71); *see Cherokee Chem. Co. v. Frazier*, No. 2:20-cv-1757-MWF (ASx), 2020 WL 8410432, at *4 (C.D. Cal. Dec. 14, 2020) (finding allegations "are more similar to the detailed description in *Navigation Holdings* than the broad, generalized categories of information listed in *Vendavo*"); *Logistics Guys Inc. v. Cuevas*, No. 2:23-cv-01592-DAD (CSKx), 2024 WL 3011216, at *7 (E.D. Cal. June 13, 2024) ("[C]onfidential customer-related information including customer lists

---

[7] As noted, this does not include a list of Xsolla's customers in isolation.

and contact information, pricing guidelines, historical purchasing information, and customers' business needs/preferences are routinely given trade secret protection." (internal quotation marks omitted)).

Unlike the well-pleaded allegations supporting most of the customer information and pricing, Xsolla fails to sufficiently allege its (i) customer pitches and customized presentations made to potential customers, and (ii) sales data and insights derived therefrom are trade secrets.  These allegations are "broad" and "categorical," like in *Vendavo, Inc.*, 2018 WL 1456697, at *3, and Xsolla does not provide detailed descriptions of this information that "permit the defendant to ascertain at least the boundaries within which the secret lies."  *Cisco Sys., Inc.*, 462 F. Supp. 3d at 1047.

### b.  Independent Economic Value

Next, Aghanim argues Xsolla fails to plead its trade secrets have independent economic value.  "To have independent economic value, a trade secret must be sufficiently valuable and secret to afford an actual or potential economic advantage over others."  *Id.* at 1052.  This pleading standard is not high.  *Calendar Rsch. LLC v. StubHub, Inc.*, No. 2:17-cv-04062-SVW (SSx), 2017 WL 10378336, at *4 (C.D. Cal. Aug. 16, 2017).  A plaintiff claiming "a competitor could use th[e] information to market itself more effectively" adequately pleads independent economic value. *Nelson Bros. Pro. Real Est.*, 2017 WL 8220703, at *5.

Aghanim objects on similar grounds as it does to whether Xsolla adequately alleges a trade secret: Xsolla's trade secrets cannot have independent economic value because they are publicly available.  (Mot. 9–10.)  However, because the trade secrets are not publicly available, the Court rejects this argument and finds Xsolla plausibly alleges independent economic value throughout its FAC.

### c.  Reasonable Measures

Lastly, Aghanim argues Xsolla fails to plead a trade secret because it did not take "reasonable measures to keep" its information secret, as required under federal and state law.  18 U.S.C. § 1839(3)(A)–(B); *see also* Cal. Civ. Code. § 3426.1(d)(1)–

(2).  Aghanim contends Xsolla did not take "consistent measures to protect" its trade secrets, including by failing to allege that customers signed NDAs or employees signed confidentiality agreements for the entirety of their employment.  (Mot. 11.)

Neither federal nor state law "require[s] . . . confidential information be kept completely clandestine or mandate the use of non-disclosure agreements in all instances."  *Bal Seal Eng'g, Inv. v. Nelson Prods., Inc.*, No. 8:13-cv-01880-JLS (KESx), 2018 WL 4697255, at *5 (C.D. Cal. Aug. 3, 2018).  Nor do these statutes "dictate a particular level of secrecy," such as confidentiality agreements.  *Id.*; *see also Nelson Bros. Pro. Real Est. LLC*, 2017 WL 8220703, at *5 ("[C]ourts in the Ninth Circuit have found reasonable effort even in the absence of a nondisclosure agreement." (collecting cases)).  At bottom, this is a "fact-intensive" analysis, and "[e]fforts at maintaining secrecy need not be extreme, just reasonable under the circumstances."  *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, No. 8:11-cv-1062-JVS (ANx), 2015 WL 13357646, at *3 (C.D. Cal. May 6, 2015).

The Court finds Xsolla adequately alleges that it made reasonable efforts to maintain the secrecy of its trade secrets.  Most employees sign confidentiality agreements, and all employees sign "the Xsolla Employee Handbook which includes language detailing the importance of confidentiality to Xsolla."  (FAC ¶ 27.)  This handbook informs employees about the "extreme[] important[ce]" of not disclosing confidential information to competitors, including the very information Xsolla alleges are trade secrets, "pricing, products and new product development, software . . . , computer programs . . . [and] customers."  (*Id.* ¶ 32.)  It also warns of the potential consequences of disclosing such information, including termination.  (*Id.*).  This is sufficient at this stage to establish reasonable measures.  *See Zoom Imaging Sols., Inc. v. Roe*, No. 2:19-cv-01544-WBS (KJNx), 2022 WL 4025293, at *7 (E.D. Cal. Sept. 2, 2022) (holding that, although employee handbook was not a contract, handbook that "contained a policy for employees to keep" information confidential was sufficient to permit plaintiff's claim to survive summary judgment).

The FAC is sufficient, even though Xsolla omits that Golubitsky and Andry signed confidentiality agreements when they first joined Xsolla. Ultimately, Xsolla alleges Golubitsky and Andry (and Tagirovich) all signed confidentiality agreements before they are alleged to have taken Xsolla's trade secrets. (FAC ¶¶ 30, 35, 41.)

Finally, Xsolla was not required to allege it required its customers to keep Xsolla's trade information confidential. As noted, Xsolla alleges the technical information is research and back-end technology; customers do not have access to this information. And while an individual customer may have access to some of its own customer information and pricing, as alleged, none of the customers had access to the customer information and pricing of all Xsolla's customers. Therefore, at this stage, Xsolla's failure to allege that it took measures to ensure its customers kept their respective information and pricing confidential does not defeat its allegations that it took reasonable measures to protect its customer information and pricing.

Because Xsolla has sufficiently alleged a trade secret that has independent economic value, which it made reasonable efforts to keep secret, the Court concludes Xsolla has alleged it owned a trade secret.

### 2. Misappropriation

Aghanim contends Xsolla fails to allege Aghanim misappropriated trade secrets. (Mot. 13–15.) Under both the DTSA and the CUTSA, "misappropriation" means either (1) the "[a]cquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means;" or (2) the "[d]isclosure or use of a trade secret of another without express or implied consent." 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b).

Aghanim principally argues Xsolla fails to allege Aghanim improperly acquired or used the trade secret information.[8] Despite allegations seemingly made in the FAC to the contrary, (e.g., FAC ¶¶ 84, 86), Xsolla now asserts it "has not alleged Aghanim

---

[8] Aghanim asserts that Xsolla's providing product and service information on its website defeats its misappropriation claim. (Mot. 13.) As explained, the Court rejects this argument.

itself improperly acquired its trade secrets." (Opp'n 17.) Thus, the Court turns to whether Xsolla has alleged Aghanim's improper use.

In support of its argument, Aghanim contends the Court should not credit Xsolla's allegations made "upon information and belief." (Opp'n 14.) The Ninth Circuit has adopted the Second Circuit's view that the "*Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

The Court finds Xsolla's "information and belief" allegations do not meet this standard, and, thus, the Court cannot consider them for purposes of this Motion. With respect to the technical information, Xsolla asserts, among other things, "[o]n information and belief," Aghanim's Founders "downloaded, copied, and/or forwarded internal and highly sensitive documents from Xsolla," (FAC ¶ 41; *see id.* ¶¶ 42, 44, 58, 85), and Aghanim used that information to develop its products, (*id.* ¶¶ 59–60; 64). Xsolla does not allege or demonstrate that these facts "are peculiarly within the possession and control of the defendant." *Soo Park*, 851 F.3d at 928 (quoting *Arista Recs., LLC*, 604 F.3d at 120). For example, Xsolla does not explain any investigation it took to determine that Aghanim's Founders did these things, or why it is unable to track the purported downloading or forwarding through its internal systems. Nor has Xsolla shown its "belief is based on factual information that makes the inference of culpability plausible." *Soo Park*, 851 F.3d at 928 (quoting *Arista Recs., LLC*, 604 F.3d at 120). Xsolla even bases its allegation that the only way Aghanim could offer the misappropriated features so quickly is by using Xsolla's trade secrets "on information and belief." (FAC ¶ 64.)

Xsolla's "information and belief" allegations concerning customer information and pricing fare no better. Xsolla alleges:

*On information and belief*, beginning as early as August 2023, Aghanim focused its marketing towards soliciting Xsolla's existing customers. Aghanim's standard marketing solicitation informed the Xsolla customer of Aghanim's upcoming launch of a product with extremely similar features to Xsolla, but at a reduced cost. *It is believed* that these prices directly undercut Xsolla's pricing, even for its largest customers. Xsolla does not publish or otherwise make its pricing known. The only way Aghanim could have effectively undercut Xsolla's pricing for similar products and services was through the theft of confidential and trade secret information – including specifically its customer-specific pricing. Indeed, Aghanim's founders had unrestricted access to all of Xsolla's customized pricing and cost structure allowing Aghanim to undercut directly Xsolla for the purpose of converting customers while still maintaining the maximum amount of profit.

(*Id.* ¶ 54 (emphasis added).)  Xsolla fails to allege how these facts are peculiarly in Aghanim's control or why it cannot find out these facts from Xsolla's existing customers.  Nor has Xsolla alleged other facts that make the inference of culpability "plausible," rather than "merely possible."  *2Tee Couture, Inc. v. By Together*, No. 2:14-cv-07735-R (PJWx), 2014 WL 12577077, at *1 (C.D. Cal. Dec. 16, 2014) (first citing *Iqbal*, 556 U.S. at 678; and then citing *Twombly*, 550 U.S. at 570).

Without these "information and belief" allegations, Xsolla does not adequately allege misappropriation.  Xsolla alleges that Aghanim's Founders accessed Xsolla's trade secrets, (FAC ¶ 74), Aghanim offered "eerily identical" services to Xsolla, (*id.* ¶ 56), and Aghanim developed its applications "in record time," (*id.* ¶ 57).  Without more, these allegations do not support a plausible inference that Aghanim misappropriated Xsolla's trade secrets.  *See, e.g.*, *Brown v. Adidas Int.*, 938 F. Supp. 628, 634 (S.D. Cal. 1996) ("Allegations of similarity, without more, do not support a claim of misappropriation of trade secrets."); *but see Applied Biological Lab'ys, Inc. v. Diomics Corp.*, No. 3:20-cv-2500-AJB (LLx), 2021 WL 4060531, at *5 (S.D. Cal. Sept. 7, 2021) (finding allegations of similarity sufficient where defendant "has no prior experience" in the field).  As such, the Court determines that Xsolla fails to state

a claim for misappropriation under the DTSA and CUTSA.  At the same time, the Court does not find amendment would be futile.

Accordingly, the Court **GRANTS** Defendant Aghanim's Motion and **DISMISSES** Plaintiff's first and second causes of action against Defendant Aghanim **WITH LEAVE TO AMEND**.

**B.    Interference with Prospective Economic Advantage, Interference with Contract, and Unfair Competition (Counts III, IV, V, and VI)**

Aghanim argues CUTSA preempts Xsolla's third claim (intentional interference with prospective economic advantage), fourth claim (negligent interference with prospective economic advantage), fifth claim (intentional interference with contract), and sixth claim (unfair competition) because each is based on the same facts as the misappropriation of trade secret claims.  (Mot. 16–18.)  "CUTSA was enacted with . . . California's legislative intent to occupy the entire field of misappropriation of trade secrets." *MedImpact Healthcare Sys., Inc. v. IQVIA Inc*, No. 19-cv-01865-GPC (LL), 2020 WL 5064253, at *16 (S.D. Cal. Aug. 27, 2020) (collecting cases).  The statute "serves to preempt all claims premised on the wrongful taking and use of confidential business and proprietary information," regardless of whether that information is a trade secret. *Teva Pharm. USA, Inc. v. Health IQ, LLC*, No. 8:13-cv-00308-CJC (RNBx), 2013 WL 12132029, at *5 (C.D. Cal. Apr. 29, 2013).  As such, CUTSA preempts Xsolla's common law claims to the extent they arise from the "same nucleus of facts as trade secret misappropriation." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc.*, 171 Cal. App. 4th 939, 962 (2009).  Thus, the Court examines the elements and allegations for each claim and dismisses those Xsolla cannot assert without the facts supporting trade secret misappropriation. *See id.* at 959.

**1.    Intentional and Negligent Interference with Prospective Economic Advantage (Counts III and IV)**

Under California law, to assert a claim for intentional interference with prospective economic advantage, a plaintiff must allege: (1) an economic relationship

between the plaintiff and a third party, "with the probability of future economic benefit to the plaintiff"; (2) "the defendant's knowledge of the relationship"; (3) the defendant's intentional acts "designed to disrupt the relationship"; (4)" actual disruption of the relationship"; and (5) "economic harm to the plaintiff proximately caused by the" defendant's acts.  *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)).  "The elements are the same for negligent interference, except the plaintiff must also allege that the defendant owed her a duty of care, and that the defendant was negligent, rather than intentional, in its conduct." *Weintraub Fin. Servs., Inc. v. Boeing Co.*, No. 2:20-cv-03484-MWF (GJSx), 2020 WL 6162801, at *7 (C.D. Cal. Aug. 7, 2020) (citing *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979)).

Here, Xsolla premises its interference claims on Aghanim "using improperly obtained and confidential information about the contact information for Xsolla customers to solicit these customers."  (FAC ¶ 98.)  In its CUTSA claim, Xsolla alleges this very same "contact information" is a trade secret.  (*Id.* ¶ 69 (alleging customer "contact persons" and "contact information" are "confidential information"); Opp'n 22 ("describing trade secrets compilation of customer . . . contact information").)  Similarly, in its prospective interference claims, Xsolla alleges Aghanim's acts "include using information Aghanim's Founders obtained from Xsolla to reach out to specific contacts from Xsolla customers."  (FAC ¶ 98.)  Xsolla makes an identical allegation in its CUTSA claim: Aghanim "used Xsolla's trade secrets for . . . soliciting and poaching Xsolla's customers."  (*Id.* ¶ 84.)

As such, the "wrongful acts alleged by" Xsolla—improper use of Xsolla's trade secrets to solicit Xsolla's customers—"plainly and exclusively spell out only trade secrets misappropriation."  *Neuman v. B2 Brands, Inc.*, No. 5:07-cv-01025-MLG, 2010 WL 11596467, at *8 (C.D. Cal. Feb. 17, 2010).  Because Xsolla's "claims cannot survive without the 'trade secret facts,'" *id.*, CUTSA preemption applies.

Accordingly, the Court **GRANTS** Aghanim's Motion and dismisses its claims for intentional and negligent interference with prospective economic advantage claims **WITH LEAVE TO AMEND**.

### 2. Intentional Interference with Contract (Count V)

To plead a claim for intentional interference with contract under California law, a plaintiff must allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *3500 Sepulveda, LLC v. Macy's W. Stores, Inc.*, 980 F.3d 1317, 1325–26 (9th Cir. 2020) (quoting *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal.4th 26, 77 (1998)).

Xsolla vaguely refers to "Aghanim's conduct," (FAC ¶ 112), and "wrongful acts," (*id.* ¶ 113), without additional detail. Xsolla further alleges Aghanim "knew of" Xsolla's customer contracts and "intended to disrupt the[ir] performance." (*Id.* ¶ 112.) The "gravamen of the wrongful conduct" for this and the UCL claims is the same: the wrongful use of Xsolla's trade secrets. *K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 961. Xsolla therefore fails "to allege an intentional interference with contract claim that arises out of a set of operative facts distinct from those relied upon to support its trade secret misappropriation claims," *Cisco Sys., Inc.*, 462 F. Supp. 3d at 1058–59, and CUTSA preemption applies. As such, the Court **GRANTS** Aghanim's Motion and dismisses Xsolla's claim for intentional interference with contract **WITH LEAVE TO AMEND**.

### 3. Unfair Competition (Count VI)

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Xsolla alleges that Aghanim violated the UCL, including by "us[ing] confidential customer information," "solicit[ing] of Xsolla customers," and misrepresenting its "independent capabilities to develop video game payment and support platforms." (FAC ¶¶ 117–18.) Each of these allegations is

"clearly based on the same nucleus of operative facts as the CUTSA claim." *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1238 (E.D. Cal. 2018).

In contrast, Xsolla separately alleges Aghanim "improper[ly] reference[d]" Xsolla's name in solicitation of customers and advertisement on its website, and "falsely and misleadingly advertised its capabilities and technological developments to compete with Xsolla." (*Id.* ¶¶ 117c–d, 118.) These claims are not based on the same facts as the CUTSA claim. Therefore, the Court finds CUTSA "partially preempts the UCL claim." *Id.* As such, Xsolla's UCL allegations concerning misappropriation are preempted, but those concerning improper references and misrepresentations are not.

Because Xsolla's UCL claim is not entirely preempted, the Court turns to Aghanim's argument that Xsolla fails to establish standing because it does not allege it suffered an injury in fact. (Mot. 19.)

To establish standing under the UCL, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011) (emphasis omitted). As the California Supreme Court has noted, "[t]here are innumerable ways in which economic injury from unfair competition may be shown." *Id.* at 323. But a mere "conclusory and vague assertion that [a plaintiff] 'lost money'" is insufficient to state a claim. *Amara v. Nationstar Mortg. LLC*, No 5:19-cv-01153-AB (SSx), 2020 WL 11648206, at *18 (C.D. Cal. Mar. 16, 2020); *see also Day v. Cal. Lutheran Univ.*, No. 22-55825, 2023 WL 4893650, at *2 (9th Cir. Aug. 1, 2023) ("[A]llegation that [plaintiff] 'lost money' in the form of 'compensation' is conclusory, and without more, insufficient to establish standing to pursue her UCL claim."). Rather, a plaintiff must plead "specific facts showing how he was economically injured." *Pitre v. Wal-Mart*

*Stores, Inc.*, No. 8:17-cv-01281-DOC (DFMx), 2017 WL 11093619, at \*4 (C.D. Cal. Nov. 8, 2017).

Xsolla conclusorily alleges that Aghanim's wrongful actions caused Xsolla to "suffer[] injury in fact, including without limitation, damages . . . , as well as loss of profits, customers, employees, goodwill, property, and prospective economic advantage." (FAC ¶ 120; *see* Opp'n 25.) Because Xsolla's UCL allegations in connection with misappropriation of its trade secrets are preempted, the economic injury must relate to the allegations of improper references and misrepresentation. In this regard, Xsolla alleges only that Aghanim is "directly benefitting" from using Xsolla's name on its website. (FAC ¶ 62; *see* Opp'n 25.) This fails to identify economic injury to Xsolla. Xsolla fails to establish standing to assert a UCL claim.

As such, the Court **GRANTS** Aghanim's Motion and dismisses Xsolla's UCL claim **WITH LEAVE TO AMEND**.

## C.    Federal Trademark Infringement (Count VIII)

Aghanim argues that Xsolla's seventh and final claim against it for federal trademark infringement should be dismissed because its use of Xsolla's mark was permitted. (Mot. 21–22.)

In trademark infringement cases, a plaintiff must establish: (1) ownership of a trademark right and (2) "that the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011). Aghanim invokes the normative fair use defense, arguing its use of Xsolla's mark does not create a likelihood of confusion. (Mot. 21–22.)

The nominative fair use doctrine applies "where a defendant uses the mark to refer to the trademarked good itself." *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015). A defendant raising this defense must prove the following: (1) the product is one not readily identifiable without use of the trademark"; (2) defendant used "only so much of the mark . . . as is reasonably necessary to

identify the product;" and (3) defendant "must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 893 (9th Cir. 2019). "If the nominative use of a mark satisfies these three factors, then there is no infringement." *Id.* "Although it is a rare situation in which granting a motion to dismiss is appropriate when a case involves questions of consumer confusion," courts dismiss trademark infringement claims when it is clear on the face of the complaint that a defendant's "alleged infringement constituted nominative fair use." *Id.* at 897 (internal quotation marks omitted).

Xsolla claims that Aghanim infringed its mark. Xsolla alleges "Aghanim's founders . . . prominently featured (on multiple occasions) their past employment at Xsolla." (FAC ¶ 52.)[9] Moreover, Xsolla asserts Aghanim "plastered" Xsolla's mark "all over Aghanim's materials," causing customers "to wonder whether the companies were affiliated or otherwise part of the same entity" and resulting in "customers inquir[ing] as to the relationship between the two companies." (*Id.* ¶ 53.) Finally, Xsolla alleges its "name is prominently displayed on the home page of the Aghanim website, leading some customers to believe the companies are connected or affiliated with one another." (*Id.* ¶ 62.)

Aghanim's use of Xsolla's mark featuring the Aghanim Founders' past employment is nominative fair use. First, Aghanim's Founders' former employer is not one readily identifiable without the use Xsolla's trademark. *See New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 306–08 (9th Cir. 1992) ("It is no more reasonably possible, however, to refer to the New Kids as an entity than it is to refer to the Chicago Bulls, Volkswagens or the Boston Marathon without using the trademark.") Second, the FAC and its exhibits make clear Xsolla has failed to allege

---

[9] This includes Xsolla's claim that Aghanim "published press releases signaling a relationship between" Xsolla's mark and Aghanim. (FAC ¶ 124.) Xsolla submits two press releases with its First Amended Complaint, both of which reference "Xsolla" solely to identify Aghanim's Founders' past employer. (*Id.* Ex. B, ECF No. 25-2; Opp'n 28 n.4.)

Aghanim used more than necessary of Xsolla's mark.  *See Applied Underwriters, Inc.*, 913 F.3d at 895 ("[A]nalysis of this factor should focus not on the number of uses of Plaintiffs' marks, but on whether Defendants used more of each individual mark than was necessary in terms of font and stylization").  Third, nothing in reference to a former employer could reasonably suggest sponsorship or endorsement of that former employer.

In contrast, Aghanim's alleged "plaster[ing]" of Xsolla's mark all over its materials and prominently displaying Xsolla's mark on Aghanim's website, (FAC ¶¶ 53, 62), does not amount to fair use.  Accepting these allegations as true, as the Court must at this stage, Xsolla pleads sufficient facts that use of its marks led consumers to reasonably conclude it sponsored or endorsed Aghanim and its products.

Accordingly, the Court **DENIES** Aghanim's Motion with respect to the trademark claim.

## VI.    CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART AND DENIES IN PART** Aghanim's Motion to Dismiss.  (ECF No. 32.)  Specifically, the Court **GRANTS** Aghanim's Motion and **DISMISSES** Xsolla's first (violation of the DTSA), second (violation of CUTSA), third (intentional interference with prospective economic relations), fourth (negligent interference with prospective economic relations), fifth (intentional interference with contract), and sixth (violation of the UCL) causes of action **WITH LEAVE TO AMEND**.    The Court **DENIES** Aghanim's Motion as to Xsolla's seventh (trademark infringement) cause of action.

If Xsolla wishes to amend, it must file a Second Amended Complaint no later than twenty-one days from the date of this Order, in which case Aghanim shall answer or otherwise respond within fourteen days of the filing.  If Xsolla does not timely amend, the dismissal of the first, second, third, fourth, fifth, and sixth causes of action shall be deemed a dismissal with prejudice as of the lapse of the deadline to amend, and the case against Aghanim will proceed as to the seventh cause of action.

**IT IS SO ORDERED.**

September 10, 2024

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

26