**O**

# United States District Court
# Central District of California

XSOLLA (USA), INC.,

                Plaintiff,

    v.

AGHANIM INC. et al.,

                Defendants.

Case № 2:24-cv-02116-ODW (AGRx)

**ORDER DENYING DEFENDANT AGHANIM INC.'S MOTION TO STAY ARBITRATION [66]**

## I.    INTRODUCTION

Under California Code of Civil Procedure section 1281.2, Defendant Aghanim, Inc. ("Aghanim") moves to stay an arbitration initiated by Plaintiff Xsolla (USA), Inc. ("Xsolla") against non-parties Constantin Andry and Konstantin Golubitsky pending resolution of this action.  (Mot. Stay ("Motion" or "Mot."), ECF No. 66.)  For the reasons discussed below, the Court and **DENIES** the Motion.[1]

## II.    REQUEST FOR JUDICIAL NOTICE

Aghanim and Xsolla separately ask the Court to take judicial notice of certain exhibits.  (Def.'s Req. Judicial Notice ("Def.'s RJN"), ECF No. 66-1; Pl.'s Req. Judicial Notice ("Pl.'s RJN"), ECF No. 69-1.)  These requests are unopposed.

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

Courts "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts "may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases." *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). Courts have extended this to include arbitration records. *See, e.g.*, *Direct Media Commc'n, Inc. v. Centene Corp.*, No. 8:19-cv-00005-DOC (KESx), 2019 WL 1601389, at *2–3 (Feb. 6, 2019). Accordingly, the Court takes judicial notice of various filings, orders, and transcripts from *Golubitsky v. Xsolla (USA), Inc.*, No. 24VECV02702 (Super. Ct.) and *Xsolla (USA), Inc. v. Andry*, AAA Case No. 01-24-0004-6336-1-AD.

## III.    BACKGROUND

As the parties are familiar with the facts of this case, the Court incorporates the background section of its prior order. (Order Granting In Part and Den. In Part Mots. Dismiss ("Second MTD Order"), ECF No. 72.) The Court limits its recitation of facts here to those most pertinent to the instant Motion.

On March 14, 2024, Xsolla initiated this action against Aghanim. (Compl., ECF No. 1.) Xsolla later added Albert Tagirovich Tugushev as a defendant. (First Am. Compl. ("FAC"), ECF No. 25.) On October 1, 2024, Xsolla filed the operative Second Amended Complaint. (Second Am. Compl. ("SAC"), ECF No. 55.) Of Xsolla's asserted claims in the Second Amended Complaint, the following remain against both Aghanim and Tugushev: (1) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, (2) violation of California Uniform Trade Secrets Act ("CUTSA"), California Civil Code section 3426, and (3) intentional interference with prospective economic advantage. (*See* Second MTD Order 41–42; SAC ¶¶ 87–143.) Xsolla also claims (4) Aghanim infringed its trademark in violation of the Lanham Act, 15 U.S.C. § 1114, (5) Aghanim violated California's Unfair Competition Law ("UCL"), California Business and Professional Code section 17200,

and (6) Tugushev breached his contract with Xsolla.  (*See* Second MTD Order 41–42; SAC ¶¶ 152–76.)

Around a month after Xsolla filed this action, Xsolla also initiated an arbitration in front of the American Arbitration Association ("AAA") against Andry and Golubitsky, both former Xsolla executives and Aghanim founders.  (Def.'s RJN Ex. A ("AAA Demand"), ECF No. 66-2.)   In the arbitration, Xsolla asserts the following claims against Andry and Golubitsky: (1) violation of DTSA; (2) violation of CUTSA; (3) intentional interference with prospective economic advantage; (4) intentional interference with contract; (5) violation of the UCL; (6) trademark infringement; (7) inducing breach of contract; and (8) conspiracy.  (Pl.'s RJN Ex. 1 ("Am. AAA Demand") ¶¶ 93–175, 192–209, ECF No. 69-2.)  Xsolla also brings arbitration claims for (9) breach of contract against Golubitsky and (10) breach of loyalty against Andry. (*Id.* ¶¶ 176–91.)

On June 6, 2024, Andry and Golubitsky brought a declaratory judgment action in Los Angeles County Superior Court, asking that court to stay the arbitration under California Code Civil Procedure section 1281.2(c).  (Pl.'s RJN Ex. 3 ("State Ct. Compl."), ECF No. 69-4; Pl.'s RJN Ex. 4 ("Am. State Ct. Compl."), ECF No. 69-5.) On December 4, 2024, the court declined to stay the arbitration and dismissed the case "[w]ithout prejudice to [Andry and Golubitsky] seeking such relief from the arbitrators or federal court."  (Def.'s RJN Ex. B ("State Ct. Order") 4, ECF No. 66-3.) On January 3, 2025, the court entered judgment against Andry and Golubitsky.  (Pl.'s RJN Ex. 5 ("State Court J."), ECF No. 69-6.)

Now, in Xsolla's federal action against Aghanim and Tugushev, Aghanim moves to stay Xsolla's arbitration against two of its founders, Andry and Golubitsky, under California Code Civil Procedure section 1281.2(c).  (Mot.)  The Motion is fully briefed.  (Opp'n, ECF No. 69; Reply, ECF No. 70.)

## IV.    LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), parties to a contract may opt to apply the California Arbitration Act ("CAA") to their arbitration agreement.  *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474–75 (1989); *Johnson v. Gruma Corp.*, 614 F.3d 1062, 1066–67 (9th Cir. 2010).  The CAA provides that when a party to an arbitration agreement refuses to arbitrate, "the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists."  Cal. Civ. Proc. Code § 1281.2.  But the court need not order arbitration if it determines that certain circumstances are present.

One such circumstance is when a "party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact."  *Id.* § 1281.2(c).    In this situation, instead of ordering arbitration, a court may order (1) "intervention or joinder of all parties in a single action"; (2) "intervention or joinder as to all or only certain issues"; (3) "arbitration among the parties who have agreed to arbitration and stay the pending court action . . . pending the outcome of the arbitration proceeding"; or (4) "stay arbitration pending the outcome of the court action."  *Id.* § 1281.2(d); *see Hearden v. Windsor Redding Care Ctr., LLC*, 103 Cal. App. 5th 1010, 1017 (2024) (providing that, under section 1281.2(c), "trial court[s] ha[ve] discretion . . . to deny defendants' motion [to compel arbitration] to avoid conflicting rulings").

## V.    DISCUSSION

Aghanim moves under section 1281.2 to stay Xsolla's arbitration against Andry and Golubitsky to avoid the possibility of conflicting rulings.  (Mot. 1.)    Xsolla opposes, arguing that (1) the prior state court ruling precludes Aghanim from raising this issue, (2) section 1281.2 does not apply to Andry's and Golubitsky's arbitration

1  agreements, and (3) Aghanim fails to show that the section 1281.2(c) factors

2  authorizing a stay are met.  (Opp'n 5–19.)

3  **A.    Issue Preclusion**

4      Xsolla asserts that Aghanim is precluded from litigating the applicability of

5  section 1281.2 because the state court has already decided this issue.  (Opp'n 6–10.)

6  To determine the preclusive effect of a prior decision, courts look to "the law of the

7  state where the rendering federal diversity court sits."  *Daewoo Elecs. Am. Inc. v. Opta*

8  *Corp.*, 875 F.3d 1241, 1247 (9th Cir. 2017) (citing *Semtek Int'l Inc. v. Lockheed*

9  *Martin Corp.*, 531 U.S. 497, 508 (2001)).

10     Under California law, issue preclusion applies: (1) after final adjudication (2) of

11 an identical issue (3) actually litigated in the first suit, (4) necessarily decided in the

12 first suit, and (5) asserted against one who was a party in the first suit or one in privity

13 with that party.  *Wright v. Beck*, 981 F.3d 719, 738 (9th Cir. 2020) (citing *DKN*

14 *Holdings LLC v. Faerber*, 61 Cal. 4th 813, 825 (2015)).  Unlike federal preclusion

15 law, the finality required for preclusion under California law "is not achieved until an

16 appeal from the trial court judgment has been exhausted or the time to appeal has

17 expired."  *Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 808 (9th Cir. 2007)

18 (quoting *Franklin & Franklin v. 7-Eleven Owners for Fair Franchising*, 85 Cal. App.

19 4th 1168, 1174 (2000)).

20     On January 3, 2025, the Los Angeles Superior Court entered final judgment in

21 favor Xsolla, (State Court J.), meaning that Andry and Golubitsky have until July 2,

22 2025, to appeal, *see* Cal. R. Ct. 8.104(a)(1)(C); Reply 2 n.1 (stating that no "Notice of

23 Entry" has been served or filed).  Therefore, the Superior Court's judgment is not final

24 for purposes of preclusion.  On that basis alone, the issue Aghanim raises by the

25 Motion is not precluded.

26     Additionally, the Superior Court expressly declined Andry and Golubitsky's

27 requested relief "[w]ithout prejudice to plaintiffs seeking such relief from the

28 arbitrators or federal court."  (State Ct. Order 4).  A finding of issue preclusion here

would be inconsistent with the very order Xsolla asserts bars Aghanim's Motion. Accordingly, Aghanim is not precluded from requesting a stay under section 1281.2.

**B.    Application of Section 1281.2**

Next, Xsolla asks the Court to reject Aghanim's Motion because section 1281.2 does not apply to this action.  (Opp'n 10–14.)  Aghanim contends that Andry's and Golubitsky's arbitration agreements incorporate section 1281.2, (Mot. 7–8), while Xsolla argues that they do not, (Opp'n 10–14).

Golubitsky's agreement states that it "shall be construed and enforced in accordance with the laws of the State of California."  (Am. AAA Demand Ex. A ("Golubitsky Employment Agreement") § 6.9.)  Both Andry's and Golubitsky's agreements provide that "[j]udgment upon the award rendered by the arbitrator may be entered in any state or federal court sitting in the County of Los Angeles, State of California."  (*Id.* § 6.1; Am. AAA Demand Ex. B ("Andry Arbitration Agreement") 1.)

"[P]arties are free to contract around the FAA by incorporating state arbitration rules into their agreements."  *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1209 (9th Cir. 1998).  However, their intent to do so must be clear.  For instance, in *Wolsey*, the Ninth Circuit examined whether an arbitration agreement requiring that disputes "be interpreted and construed under the laws of the State of California" was sufficient to incorporate California arbitration rules and specifically the CAA's section 1281.2(c).  *Id.* at 1209–10.  The Ninth Circuit held that the arbitration agreement did not incorporate section 1281.2(c) because it did "not contain a specific reference to the state arbitration rule." *Id.* at 1212.

Nearly, seven years later, the California Supreme Court addressed a similar issue. *See Cronus Invs., Inc. v. Concierge Servs.*, 35 Cal. 4th 376 (2005).  In *Cronus*, the Court interpreted a choice-of-law clause that provided, "This agreement shall be construed and enforced in accordance with and governed by the laws of the State of California." *Id.* at 387.  The court there declined to follow *Wolsey* and held that the

provision "incorporates California's rules of arbitration into the contract," including section 1281.2(c).  *Id.* at 387, 393 n.8.  Which precedent applies could affect the determination of whether an arbitration agreement incorporates section 1281.2.

Xsolla argues that *Cronus* "deviate[s] from binding Ninth Circuit precedent," and that *Wolsey* is binding on this Court.  (Opp'n 10.)  To the extent these cases are incompatible, whether *Wolsey* or *Cronus* is controlling turns on the *Wolsey* court's basis for its holding.  If the Ninth Circuit interpreted the FAA, then *Wolsey* controls. But if it interpreted California contract law, then *Cronus* prevails.  *See Munson v. Del Taco, Inc.*, 522 F.3d 997, 1002 (9th Cir. 2008) (stating that the Ninth Circuit's prior interpretation of California law is "only binding in the absence of any subsequent indication from the California courts that [its] interpretation was incorrect").

Courts within this District have come to different conclusions about which case controls.  *Compare BioMagic, Inc. v. Dutch Bros. Enters., LLC*, 729 F. Supp. 2d 1140, 1148 (C.D. Cal. 2010) ("*Wolsey* is both controlling and more persuasive than *Cronus*."), *and Shulman v. Kaplan*, No. 2:19-cv-05413-AB (FMx), 2020 WL 2748022, at *6 (C.D. Cal. Jan. 28, 2020) (same); *with Key Brand Ent. Inc. v. Dancap Prods., Inc.*, No. 2:08-cv-02416-AHM (Ex), 2008 WL 11411725, at *5 (C.D. Cal. Sept. 9, 2008) ("This [c]ourt must follow the guidance from [*Cronus*]."), *aff'd*, 370 F. App'x 813 (9th Cir. 2010), *and Emanate Health v. Optum Health*, No. 2:23-cv-09872-MCS (SKx), 2024 WL 5413649, at *2 (C.D. Cal. July 23, 2024) (same).

However, the Court need not resolve this issue.  Even if *Cronus* controls and Golubitsky's arbitration agreement authorizes a stay under section 1281.2(c), the Court would decline to exercise its discretion to stay the arbitration because Andry's agreement does not also authorize a stay under that provision.  *See, e.g.*, *Henry v. Alcove Inv., Inc.*, 233 Cal. App. 3d 94, 102 (1991) ("[T]he Legislature made stay orders in cases involving third parties discretionary . . . ."); *Mount Diablo Med. Ctr. v. Health Net of Cal., Inc.*, 101 Cal. App. 4th 711, 726 (2002) (providing that

section 1281.2 "giv[es] the court discretion not to enforce" an arbitration agreement under certain circumstances).

In asking the Court to stay the arbitration, Aghanim focuses primarily on Golubitsky's arbitration agreement, which provides that it "shall be construed and enforced in accordance with the laws of the State of California." (Mot. 7; Reply 6–8.) Aghanim addresses the text of Andry's agreement in only one sentence stating, "Andry's arbitration agreement also contemplates enforcement of its terms under California law, mandating the entry of judgment 'in any state or federal court sitting in the County of Los Angeles, State of California.'" (Mot. 8 (quoting Andry Arbitration Agreement 1).) However, this provision of Andry's arbitration agreement is not a *choice-of-law* provision, but one specifying *venue*. Aghanim provides no authority to support that, through this venue provision, the parties agreed to displace the FAA and apply the CAA, including section 1281.2. Not even *Cronus* supports Aghanim's interpretation that a venue provision could incorporate the CAA into an arbitration agreement. *See Cronus*, 35 Cal. 4th at 387 ("We agree that the *choice-of-law* provision . . . incorporates California's rules of arbitration into the contract." (emphasis added).) While Xsolla highlights this point, (Opp'n 12), neither party addresses its implication. Without Xsolla and Andry agreeing that section 1281.2 is applicable to their dispute, the only logical conclusion is that the Court lacks authority under section 1281.2 to stay Xsolla's arbitration as to Andry.

Without authority to stay Xsolla's arbitration as to Andry, the Court declines to stay the arbitration as to Golubitsky even assuming it has the authority to do so under section 1281.2. Granting a stay here would run counter to section 1281.2's purpose. Section 1281.2's "legislative history broadly defines the problem the Legislature intended to address." *Whaley v. Sony Comput. Ent. Am., Inc.*, 121 Cal. App. 4th 479, 488 (2004). The problem was:

> In actions involving multiple parties with related claims, where some
> claimants agree to arbitrate their differences and others remain outside

the agreement, arbitration is unworkable. Where a party to an arbitration agreement is also party to a pending court action or special proceeding, with such a third party, there may be a possibility of conflicting rulings on issues of law or fact.

*Id.* (emphasis omitted).

Aghanim contends that, absent a stay, the problem the legislature sought to address is the exact situation present here.  (Mot. 10–12.)  As Aghanim explains, (Reply 9), Xsolla's claims against Aghanim, in this action, and against Golubitsky and Andry, in the arbitration, substantially overlap.  For example, Xsolla brings trade claims under DTSA and CUTSA against Aghanim, Andry, and Golubitsky, alleging they misappropriated the same thirteen categories of trade secrets.  (*Compare* SAC ¶¶ 87–132, *with* Am. AAA Demand ¶¶ 93–136.)  Xsolla's theory of its case against Aghanim is that Aghanim's founders—including Andry and Golubitsky— "accumulated confidential and trade secret Xsolla information" and used that information to found Aghanim.  (SAC ¶¶ 1–2.)  According to Aghanim, absent a stay, this overlap poses a risk of conflicting rulings.

But staying the arbitration as to Golubitsky would exacerbate, not relieve, the concerns California's legislature sought to remedy when it enacted section 1281.2.  The arbitration against Andry would continue, posing the same risk of conflicting rulings.  What is more, once the stay is lifted, Xsolla, Golubitsky, and a future arbitrator will have to arbitrate in light of those rulings from both this Court and the Andry arbitration.  And while the issues in this action and the arbitration may overlap, Xsolla's claims against Andry and Golubitsky in the arbitration are virtually identical.  (*See* Am. AAA Demand.)  Ultimately, staying Xsolla's arbitration as to Golubitsky would not minimize the possibility of conflicting rulings and thus would not serve the purpose of section 1281.2.  Accordingly, to the extent section 1281.2 authorizes the Court to stay Xsolla's arbitration against Golubitsky, the Court declines to exercise its discretion to do so.

## VI.    CONCLUSION

For the reasons above, the Court **DENIES** Aghanim's Motion to Stay Arbitration.  (ECF No. 66.)

**IT IS SO ORDERED.**

June 6, 2025

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**